535 A.2d 739

Employee Benefit Plan of Harleysville Mutual Insurance Company and Harleysville Mutual Insurance Company and DeForrest VonLaufer, Petitioner, v. George F. Grode, in his capacity as Insurance Commissioner for the Commonwealth of Pennsylvania and Chairman of the Catastrophic Loss Trust Fund Board, Respondent.

Argued September 15, 1987, before Judges BARRY and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Jane Dalton Elliott,* with her, *James J. McCabe,* and *Amy E. Wilkinson, Duane, Morris & Heckscher,* for petitioners.

*Richard J. Enterline,* Assistant Counsel, with him, *M. Hannah Leavitt,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, January 12, 1988:

In *Harleysville Mutual Insurance Co. v. Catastrophic Loss Trust Fund,* 101 Pa. Commonwealth Ct. 215, 515 A.2d 1039 (1986), we sustained preliminary objections filed by the Catastrophic Loss Trust Fund (CAT Fund) and dismissed two petitions for review filed in our original jurisdiction by Harleysville Mutual Insurance Co. (Harleysville) and the Employee Benefit Plan of Harleysville Mutual Insurance Co. (Benefit Plan). In essence, both Harleysville and the Benefit Plan were challenging the CAT Fund's denial of benefits to two in-

dividuals who had been seriously injured in automobile accidents.[1] We sustained the CAT Fund's preliminary objections, primarily relying upon the failure of Harleysville and the Benefit Plan to avail themselves of adequate administrative remedies before the Insurance Commissioner. Following our dismissal of the petitions for review there, appellants Harleysville, the Benefit Plan and DeForrest VonLaufer (one of the two accident victims) appealed to the Insurance Commissioner which upheld the CAT Fund's denial of benefits. This appeal followed.

Because of the recitation of facts in our prior opinion, we need give only a very brief factual narrative here. VonLaufer had been issued a no-fault insurance policy by Harleysville prior to October 1, 1984. Marion Lyons (the other individual referred to above) had been issued a no-fault policy prior to October 1, 1984. She was an employee of Harleysville and therefore insured by the Benefit Plan. On October 1, 1984, the Motor Vehicle Financial Responsibility Law, 75 Pa. C. S. §§1701-1798, became effective. Section 1766 provided that except in the case of workmen's compensation, the CAT Fund would be the primary source for paying reasonable and necessary medical expenses and rehabilitative services, when they exceeded $100,000, up to a lifetime maximum for an eligible claimant of $1,000,000. VonLaufer's accident occurred on October 30, 1984 while Lyons' accident occurred on December 8, 1984. At the time of the accidents, each individual's no-fault policy, issued before the effective date of Financial Responsibility Law, was in effect. Because of the

---

[1] We point out that both injured individuals are having their respective expenses resulting from the accidents paid by either Harleysville or the Benefit Plan; any recovery from the CAT Fund would go to either Harleysville or the Benefit Plan.

no-fault coverage, the CAT Fund denied benefits. After the Insurance Commissioner eventually affirmed the CAT Fund's denial of benefits, appellants sought relief from this Court.

Before proceeding, we believe it apt to quote the observations of President Judge CERCONE of the Superior Court when that court was called upon to review portions of the predecessor to the Financial Responsibility Law.

> At the outset we caution anyone who embarks on the high seas of Pennsylvania's No-Fault Motor Vehicle Insurance Act not to do so without a good compass, a knowledge of reefs and storms and plenty of food and water. Any attempt to choose an alternate route by land in an effort to unlock the secrets of the Act will encounter mazes of paths, pitfalls, underbrush and dead ends.

*Heffner v. Allstate Insurance Co.,* 265 Pa. Superior Ct. 181, 184, 401 A.2d 1160, 1161 (1979).

Section 11 of the Financial Responsibility Law provides, "This Act applies to insurance policies issued or renewed after the effective date of this Act." No one argues that the no-fault policies in question here were either issued or renewed after October 1, 1984. A literal reading of Section 11 indicates that the Financial Responsibility Law applies only when an automobile insurance policy is issued or renewed after October 1, 1984. In spite of this clear indication of legislative intent, the appellants put forth the following arguments in claiming that they are entitled to CAT Fund benefits.

Subchapter F of the Financial Responsibility Law, 75 Pa. C. S. §§1761-1769 deals specifically with the CAT Fund. Appellants rely upon the following definitions in support of their claim. An "eligible claimant" is defined therein:

Except as provided in the definition of ineligible claimant, eligible claimant includes a resident of this Commonwealth who suffers an injury on or after the effective date of this subchapter arising out of the maintenance of a motor vehicle. . . . Otherwise eligible claimants shall not be disqualified from participating in or receiving benefits from the Catastrophic Loss Trust Fund for injuries suffered after the effective date of this subchapter but prior to their first registration renewal after the effective date of this subchapter.

75 Pa. C. S. §1761. An "ineligible claimant" is defined as:

(1) a person who is the owner of a motor vehicle who has not complied with the registration requirements of Chapter 13 (relating to the registration of vehicles).

(2) A person who is a driver or occupant of a recreational vehicle not intended for highway use, a motorcycle, a motorized pedacycle, a motor-driven cycle or like type vehicle required to be registered under this title but not subject to the charge levied in Section 1762 (relating to funding).

Id. Section 1762 of the Financial Responsibility Law requires all registrants of motor vehicles (except those specifically excepted in both Section 1762 and in the definition of ineligible claimant) to pay a five dollar charge at the time the vehicle is registered.

Appellants argue that the claimants here were injured in an accident arising out of use of a motor vehicle after October 1, 1984. As they did not fall into the definition of an ineligible claimant, appellants argue they are eligible for CAT Fund benefits. While there is a seeming ring of logic to this argument, we cannot agree with it.

As already mentioned, Section 11 of the Financial Responsibility Law renders the Law applicable to all insurance policies issued or renewed after October 1, 1984, and here the policies unquestionably were not issued or renewed after that date. We believe that the reference to the five dollar funding fee in the definition of "eligible claimant" recognized that the date for issuance of insurance policies did not necessarily coincide with the date an insured's automobile registration expired. The situation therefore could arise where an insured would be covered by a policy issued or renewed after October 1, 1984 and have an accident before the then current registration expired. To foreclose any argument that the insured was not eligible for CAT Fund benefits, the Legislature explicitly provided for this possibility in its definition of "eligible claimant". While appellants argue that the Legislature could have specifically excluded those covered by a no-fault insurance policy if that was its intent, we believe the Legislature addressed this problem in Section 11 by stating that the provisions of the Financial Responsibility Law applied only to insurance policies issued or renewed after October 1, 1984, thereby leaving in force any no-fault policies until those policies expired.

Appellants also rely upon 75 Pa. C. S. §1766(c) which states that CAT Fund benefits shall be primary to any benefits except workmen's compensation benefits and any other benefits made primary by the Legislature. According to their argument, since the Legislature failed to specifically state that no-fault benefits were primary to CAT Fund benefits, the latter would be primary in any interaction between the two. Again, this argument is fatally flawed because there is no coordination between the two since CAT Fund benefits come into play only after a no-fault policy expires.

Appellants point out that passage of the Financial Responsibility Law evidences the Legislature's rejection of case law under no-fault, which forced the insurance companies to pay benefits they may not have considered when setting their premiums. While that may have been true, we are certain that premiums reflected these coverages once it was clear that a no-fault insurer was responsible for certain losses. Appellants admit that one of the purposes of the Financial Responsibility Law was to reduce insurance premiums because the insurers would no longer be responsible for unlimited medical expenses as they were under no-fault. Were we to rule in appellants' favor, the effect would be to allow the insurers to shift (to the CAT Fund) their contract obligations to provide unlimited medical coverage.

Finally, the appellants complain about a resolution of the CAT Fund Board which directed that claims for CAT Fund benefits be denied to any persons covered by a no-fault policy. Suffice it to say that we believe this was the intent of the Legislature as evidenced by Section 11 of the Financial Responsibility law. Therefore, any resolution that mirrors the Legislature's intent is not unlawful.

## ORDER

Now, January 12, 1988, the order of the Insurance Commissioner at Nos. CF85-1 and CF85-2, dated September 12, 1986, is hereby affirmed.