599 A.2d 267

**NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company and Nationwide General Insurance Company, Petitioners,**

v.

**Constance B. FOSTER, Insurance Commissioner and Insurance Department of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided Nov. 14, 1991.

H. Lee Roussel, for petitioners.

Terrance A. Keating, Dept. Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

McGINLEY, Judge.

On April 9, 1991, Petitioners Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and Nationwide General Insurance Company (collectively, Nationwide) filed an action in our original jurisdiction seeking declaratory and injunctive relief against the Insurance Department and Insurance Commissioner Constance B. Foster (collectively, Commissioner). Presently before this Court is an application for summary relief filed by Nationwide and a cross-application for summary relief filed by the Commissioner.[1] The issue presented for our review is whether 75 Pa.C.S. § 1797(a), as amended by Act 6 of 1990, applies to policies providing coverage under the repealed Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act).[2]

In its complaint Nationwide alleges that 75 Pa.C.S. § 1797(a), as amended by Act 6, established limits on fees that could be charged insurers by medical care providers. Section 1797(a) provides in pertinent part:

[1]. On May 20, 1991 Nationwide and the Commissioner filed a joint motion requesting that this matter be resolved on applications for summary relief.

[2]. Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. §§ 1009.101 to 1009.701, repealed by the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7 which became effective October 1, 1984.

A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits, including extraordinary medical benefits, for a motor vehicle described in Subchapter B (relating to motor vehicle liability insurance first party benefits) shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index chart; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less. The General Assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products or services or services for injuries covered by liability or uninsured and underinsured benefits or first part medical benefits insurance.

75 Pa.C.S. § 1797(a).

Nationwide alleges that the medical payment cap, which became effective April 15, 1990, applies to all medical expenses incurred after that date including medical expenses arising out of accidents that occurred under No-fault Act policies. In support of this contention Nationwide alleges that 75 Pa.C.S. § 1797 does not expressly or impliedly distinguish between persons injured under No-fault Act policies and those injured under MVFRL policies issued subsequent to the repeal of the No-fault Act on October 1, 1984. The No-fault Act provided unlimited liability for medical and rehabilitation expenses.

Nationwide bases its argument on an April 2, 1990 "Statement of Policy" published by the Commissioner and subsequently codified at 31 Pa.Code § 68.1 which provides:

> Section 18 of the act of February 7, 1990 (P.L. 11, No. 6) (Act 6) which amends 75 Pa.C.S. Chapter 17 (relating to the Motor Vehicle Financial Responsibility Law) (MVFRL) to provide for customary charges for medical treatment takes effect in this Commonwealth on April 15, 1990. This section applies to payments by property and casualty insurers for medical treatment or services rendered on or after April 15, 1990, for treatment or care of persons covered by automobile insurance, regardless of when the accident or incident resulting in the need for medical care occurred or when the claim was in the need for medical case occurred or when the claim was filed.

Nationwide contends that the language "regardless of when the accident or incident resulting in the need for medical care occurred" indicates that the medical payment cap was intended to apply to No-fault Act policies as well as MVFRL policies.

Nationwide further contends that the Commissioner improperly and unilaterally reinterpreted this regulation by issuing, on October 13, 1990, a clarification of the Statement of Policy set forth in 31 Pa.Code § 68.1. This clarification reads:

> To the extent that 31 Pa.Code § 68.1(a) ... could imply the applicability of the medical cost containment provisions to claims arising under the No–Fault Law, this clarification is necessary. The pronouncement of this section of the Department's Statement of Policy does not apply to services rendered to victims resulting from accidents which occurred under No–Fault Law policies.

20 Pa.B. 5267 (1990).

Nationwide contends that the Commissioner's October 13, 1990 reinterpretation limiting the application of 75 Pa.C.S. § 1797 only to accidents that occurred under MVFRL policies issued after the repeal of the No-fault Act is contrary to the plain language of 75 Pa.C.S. § 1797 on its face and is also contrary to applicable law.

Accordingly, in Count I of its complaint Nationwide requests a declaration that all payments for medical expenses

and supplies after April 15, 1990, for or on behalf of persons injured under No-fault Act policies are subject to the medical payment cap of 75 Pa.C.S. § 1797(a). In Count II, Nationwide requests that the Commissioner be enjoined from imposing penalties or from taking enforcement proceedings against Nationwide for its payment of medical services or supplies rendered after April 15, 1990 for injuries sustained under No-fault Act policies.

In her answer, the Commissioner denies that she "reinterpreted" 75 Pa.C.S. § 1797 and states that she merely published a "clarification" of 31 Pa.Code § 68.1 in the Pennsylvania Bulletin on October 13, 1990. The Commissioner contends that she is charged with the administration of Act 6 and that her interpretation of the statute must be given great deference and disregarded only when clearly incorrect. The Commissioner also denies that her clarification is contrary to the plain language of 75 Pa.C.S. § 1797.

On May 14, 1991, Nationwide filed an application for summary relief seeking the declaratory and injunctive relief requested in its complaint. On June 5, 1991, the Commissioner filed a cross-application for summary relief seeking a declaration that the medical payment cap provisions of the MVFRL (75 Pa.C.S. § 1797) apply only to policies issued pursuant to the MVFRL and not to policies issued under the No-fault Act.

Consequently, we must determine whether the medical payment cap of 75 Pa.C.S. § 1797(a) applies to current medical services for or on behalf of persons injured in accidents occurring under insurance policies issued by Nationwide prior to the enactment of the MVFRL under the repealed No-fault Act.

Nationwide contends that the medical payment cap in 75 Pa.C.S. § 1797 applies to all current medical services, regardless of when the accident giving rise to the need for the medical services occurred. In support of its position, Nationwide contends that 75 Pa.C.S. § 1797, prior to its amendment by Act 6, was essentially a reenactment of

438

Section 407 of the No-fault Act.[3]  Therefore, Nationwide argues that because the plain language of 75 Pa.C.S. 1797(a) contains no limitation on its application to current medical care and makes no distinction between accidents occurring before or after repeal of the No-fault Act, the medical payment cap must apply to medical services rendered under No-fault Act policies.  Nationwide also notes in its argument that the specific first-party benefits available in policies[4] issued under the MVFRL and No-fault Act are similar.

In *Ochs v. Erie Insurance Exchange*, 390 Pa.Superior Ct. 419, 568 A.2d 971 (1990) the Superior Court held that the provisions of the MVFRL had no effect on the obligations of an insurer under a policy issued pursuant to the No-fault Act.  *Id.*, 390 Pa.Superior Ct. at 422, 568 A.2d at 973.  In *Ochs* the Court further held that a No-fault policy is not subject to the provisions of the MVFRL.  *Id.*, 390 Pa.Superior Ct. at 425, 568 A.2d at 974.  In the present case, the Commissioner has determined that the medical

**3.** Section 407 of the No-fault Act provided:

Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for an injury covered by basic loss benefits, and any person or institution providing rehabilitative occupational training following such an injury, may charge a reasonable amount for the products, services and accommodations rendered.  In no event, however, may a charge by any person or institution be in excess of the amount the person or institution customarily charges for like product, services, and in accommodations in cases involving no insurance.

*Formerly* 40 P.S. § 1009.407.

Prior to its amendment by Act 6, 75 Pa.C.S. § 1797 provided:

A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by medical or catastrophic loss benefits shall not make a charge for the treatment, accommodations, products or services in excess of the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

**4.** Nationwide argues that policies issued under the No-fault Act provided first-party benefits similar to the specific first-party benefits available in policies issued under the MVFRL.  These include medical benefits for injuries involving uninsured motorists and underinsured motorists as well as other first-party medical benefits.

payment cap in 75 Pa.C.S. § 1797(a) applies only to policies issued under the MVFRL which became effective October 1, 1984 and does not apply to policies issued prior to that date under the No-fault Act. An agency's interpretation is entitled to great judicial deference. Also, where the statutory scheme is complex a reviewing court must be even more cautious in substituting its discretion for the expertise of the administrative agency. *SmithKline Beckman Corporation v. Commonwealth*, 85 Pa.Commonwealth Ct. 437, 457–458, 482 A.2d 1344, 1353 (1984).

Also in *Employee Benefit Plan of Harleysville Mutual Insurance Company v. Grode*, 112 Pa.Commonwealth Ct. 470, 535 A.2d 739 (1988) this Court noted that the provisions of the MVFRL apply only when a policy is issued or renewed after October 1, 1984. In *Employee Benefit Plan* we noted "that one of the purposes of the Financial Responsibility Law [MVFRL] was to reduce insurance premiums because the insurers would no longer be responsible for unlimited medical expenses as they were under no-fault." *Id.*, 112 Pa.Commonwealth Ct. at 476, 535 A.2d at 742. Therefore, to apply the medical payment cap in 75 Pa.C.S. § 1797(a) to treatment for injuries covered by No-fault Act policies would be to eliminate Nationwide's contractual obligations under its No-fault Act policies to provide unlimited medical coverage.

■ Accordingly, we hold that the medical payment cap in 75 Pa.C.S. § 1797(a) applies only to policies issued under the MVFRL which became effective October 1, 1984 and does not apply to medical services for injuries covered by policies issued under the repealed No-fault Act. The Commissioner's application for summary relief is granted. Nationwide's application for summary relief is denied.

## ORDER

AND NOW, this 14th day of November, 1991, the Insurance Commissioner's cross-application for summary relief in the above-captioned proceeding is granted. Nationwide's application for summary relief is denied and Nationwide's complaint is dismissed.