**GRADUATE HEALTH SYSTEMS,
INC., Petitioner,**

v.

**PENNSYLVANIA INSURANCE
DEPARTMENT,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1996.

Decided April 8, 1996.

Anthony E. Creato, for Petitioner.

Amy L. Weber, Department Counsel, for Respondent.

Before SMITH and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

Graduate Health Systems, Inc. (GHS) appeals from an order of the Commissioner of the Pennsylvania Department of Insurance (department) which affirmed a decision of the Pennsylvania Compensation Rating Bureau (bureau) denying GHS's request for a workers' compensation rate classification separate from its hospital subsidiaries. We affirm.

The Pennsylvania Manual of Rules, Classifications and Rates for Workers Compensation and for Employers Liability Insurance (manual) sets forth the classification of risks, underwriting rules, premium rates, and schedule or merit rating plan for insurance of employer and employees under the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4.[1] The manual provides a general explanation of the classification system for risk. Reproduced Record (R.) at 117a–30a.[2]

GHS's employees are classified as Code 961—hospital. In 1990, GHS filed a request with the bureau for a rate classification separate from its hospital subsidiaries. The bureau's classification and rating committee (committee) determined that GHS's employees should be classified as Code 961—hospital and not as Code 953—clerical office employees or Code 951—salesmen.

GHS appealed the committee's decision to the Commissioner. A presiding officer was appointed and a hearing was held on July 20, 1992, attended by a representative from GHS and the bureau. Following the completion of the briefing schedule, the Commissioner issued an adjudication and order affirming the committee's decision. In her adjudication, the Commissioner set forth the following relevant findings of fact:

1. Graduate Health Systems (hereinafter "GHS") is a corporation in the business of providing management services to hospitals.

2. GHS is the parent company to Graduate Hospital, Mount Sinai Hospital, Community General Hospital, Zurbrugg Hospital and Riverside Hospital [3] (hereinafter "affiliated" or "subsidiary" hospitals) (N.T. 10, 19–20).

3. GHS was established to provide those administrative services for its affiliates.

4. GHS was established for the purpose of providing the services in an economical fashion. (N.T., p. 26).

5. The business of GHS is the provision of administrative services to its subsidiary hospitals. (N.T., p. 77).

6. GHS has separate officers from the officers of Graduate Hospital (a corpora-

1. Pursuant to section 654 of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 689, as amended, 40 P.S. § 814, the classification of risks, underwriting rules, premium rates, and schedule or merit rating plans for insurance of employer and employees under the Act, written as a part of a workmen's compensation and employers' liability policy, shall be proposed annually by one or more rating bureaus, subject to supervision and to examination by the Commissioner and approved by the Commissioner as adequately equipped to compile rates on an equitable and impartial basis. Section 654 also provides that "[t]he assignment by an approved rating bureau of any individual risk to a particular classification in accordance with the system of classification of risks and underwriting rules approved by the Insurance Commissioner may be appealed by any person, corporate or otherwise, aggrieved by such assignment before the assigning bureau ... and, if still aggrieved by such reviewed assignment, such person may obtain a further review thereof by filing an appeal with the Insurance Commissioner...." 40 P.S. § 814(c).

2. We note that a copy of the manual is not contained in the original record; however, this court may take judicial notice of the provisions of the manual as the classification of risks found therein has been approved by the Commissioner pursuant to section 654 of The Insurance Department Act of 1921.

3. Zurbrugg and Riverside Hospitals are located in New Jersey.

tion) and Mount Sinai Hospital (a corporation) (N.T. 11).

7. GHS, as the parent, is the owner of the subsidiary hospitals and approves their budgets and boards of directors. (N.T., pp. 98, 99).

8. GHS appoints the directors of each of its subsidiary hospital corporations (N.T. 11).

9. GHS maintains a separate payroll from its subsidiary hospital corporations (N.T. 12).

10. GHS maintains a separate office building from its subsidiary hospital corporations except that it leases separate office space in the Mount Sinai Hospital (N.T. 13–14).

11. GHS files separate tax returns from its subsidiary hospital corporations (N.T. 15–16).

12. GHS provides financial, legal, fund raising and public relations services pursuant to management contracts with its subsidiary hospital corporations (N.T. 10, 17–18).

13. The services offered by GHS for its subsidiary hospitals are similar to those provided by the internal staff of free standing hospitals. (N.T., p. 28).

14. Many employment functions in a traditional freestanding hospital contribute to the business administration of the hospital, not for direct care of the patients. (N.T. p. 27).

15. The services that GHS offers to its subsidiary hospitals are services which enable them to carry on their business. (N.T., p. 36).

16. The services that GHS provides to its subsidiaries are normal to a hospital operation. (N.T., pp. 62, 110).

17. GHS has solicited management contracts with nonaffiliated hospital [sic] in the past (N.T. 32).

18. GHS has no management contracts with nonaffiliated hospitals (N.T. 26).

19. The affiliated hospitals are commonly owned by GHS (N.T. p. 25).

20. GHS is not a hospital, it provides no patient care, employs no physicians, does not house patients and is not licensed by the Commonwealth as a hospital (N.T. 13–15).

21. The purpose of the classification system is to group employers with similar operations into a single classification based on their field of business. (N.T., p. 49).

22. It is the business of the insured not the individual employments, occupations, or operations within the business that are classified. (N.T., p. 49).

23. Classification assignments are made according to the risk field of business not the potential risk of exposure to harm by the employees.

24. Classification Code 961, Hospital, is an all-inclusive classification meaning [sic] that it includes all employees of a hospital, even clerical.

25. The standard exception classifications that are allowed by most of the other classifications are not permitted by the all-inclusive classifications. Those standard exceptions are Code 951, Salesmen, and Code 953, Clerical Office Employees. (N.T., p. 55).

26. The hospital classification includes not only the medical personnel but the support functions as well, such as laundry, security, food preparation, accounting, and bookkeeping. (N.T., p. 51).

27. The administration of the classification system is based on the presumption that similar employers will face the same types of hazards and risks and the rate will flow from there because it is based on the actual experience of the employers in that classification. (N.T., p. 85).

28. Commonly-owned insureds are classified together, even though they may have separate functions, if their functions are an integral part of the overall business operations of the related entitites [sic]. (N.T., p. 102).

29. The rate for a classification reflects the loss experience of the employers in that classification. (N.T. pp. 83, 84, 85).

Based on these findings, the Commissioner concluded that when the totality of the circumstances is considered, it is clear that GHS and its affiliated hospitals are properly considered as a single enterprise and classi-

fied as such. The Commissioner concluded further that this finding is consistent with the fundamental purpose of the classification system to group insureds into classifications so that the rate for each classification reflects the exposures common to such distinct business enterprise. Accordingly, the Commissioner held that GHS did not meet its burden of proving that its employees should be classified as Code 953—clerical office employees or Code 951—salesmen.

GHS now appeals the Commissioner's January 6, 1995 order affirming the bureau's determination to this court.[4] GHS raises the following issues on appeal:

· Whether the Commissioner erred in refusing to change the classification of GHS from Code 961 to Codes 951 and 953 where GHS, as acknowledged by the Commissioner and the bureau, is not a hospital and does not meet any of the criteria of Code 961.

· Whether a parent which performs distinct functions from those of its subsidiaries; which is recognized by federal, state and local governments as separate and distinct from its subsidiaries; which has different employees than its subsidiaries; and which is housed in a different location than its subsidiaries, is subject to the rate classification of its subsidiaries.

· Whether there must be, as the manual provides, separate classifications where there are distinct enterprises conducted by the same insurer; the entire work in each enterprise is conducted in a separate building or in the same building on a separate floor; and the insured conducts each enterprise as a separate undertaking with separate records of payroll.

· Whether the activities and exposure to harm of the employees of the applicant for reclassification are paramount over those of its subsidiaries (who are not seeking reclassification) in determining whether the applicant should be reclassified.

Initially, we note that this court must affirm the Commissioner's adjudication unless we find that the adjudication violates GHS's constitutional rights, is not in accordance with law, violates the practice and procedure of Commonwealth agencies, or that a finding of fact necessary to support the adjudication is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Boston Old Colony Insurance Company v. Insurance Department*, 146 Pa.Cmwlth. 142, 604 A.2d 1191 (1992). The Commissioner's adjudication is not in accordance with law if it represents " 'a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.' " *Boston Old Colony* 604 A.2d at 1193 (citation omitted).

Statutory and regulatory interpretations of a regulatory agency should be accorded great deference. *Carlson Mining Company v. Department of Environmental Resources*, 163 Pa.Cmwlth. 141, 639 A.2d 1332 (1994), *petition for allowance of appeal denied*, 538 Pa. 675, 649 A.2d 676 (1994). Where the statutory scheme is complex, the reviewing court must be even more cautious in substituting its discretion for the expertise of an administrative agency. *Nationwide Mutual Insurance Co. v. Foster*, 143 Pa. Cmwlth. 433, 599 A.2d 267 (1991).

## I. PERTINENT MANUAL PROVISIONS

The general provisions of the manual governing classifications provide that the objective of the classification system is to group insureds into classifications so that the rate for each classification reflects the exposures common to such distinct business enterprise. R. at 118a. Subject to certain exceptions, it is the business of the insured within Pennsylvania that is classified, not the separate employments, occupations or operations within the business. *Id.* All classifications in the manual are basic classifications; however, some occupations are common to so many businesses that special classifications, known

---

4. GHS filed a petition for reconsideration with the Commissioner which was deemed denied pursuant to 1 Pa.Code § 35.241(d). Section 35.241(d) provides that unless the agency head acts upon a petition for reconsideration within thirty days after it is filed, the petition shall be deemed to have been denied.

as standard exception classifications, have been established for them. *Id.* Two such standard exception classifications are clerical office employees or Code 953 and salespersons, collectors or messengers—Outside or Code 951. *Id.* Code 953 is described as:

a. CLERICAL OFFICE EMPLOYEES—CODE 953—are employees whose duties are confined exclusively to keeping the books and records of the insured and conducting correspondence—who are engaged exclusively in office work where such books and records are kept or such correspondence is conducted, having no other regular duty of any nature in or about the insured's premises.

This classification applies only to employees who work in areas physically separated from other operations by structural partitions and in which work of clerical office employees as defined in this rule is performed exclusively.

If any clerical office employee has any other regular duty, the entire payroll of that employee shall be assigned in accordance with the class to which the business is assigned.

*Id.*

Code 951 is described as:

c. SALESPERSONS, COLLECTORS, or MESSENGERS—Outside, Code 951—are employees engaged in such duties away from the employer's premises. This classification shall not apply to employees who deliver merchandise or products. Employees delivering merchandise or products, even though they may also collect or solicit, shall be assigned in accordance with the classification appropriate to the business of the employer for which delivery is being made.

This classification does not include any floor and/or counter salespersons, who, as a regular part of their duties, handle or display the actual merchandise sold by the insured. Such employees shall be assigned in accordance with the class appropriate to the business at the location.

Salesmen, Collectors and Messengers shall be separately classified and rated except in connection with those classes which specifically include all employees or all employees except office. Employees who sell or solicit exclusively by telephone shall be assigned to Code 953, Clerical Office Employees.

R. at 118a–19a.

There are general exclusions from basic classifications. R. at 119a. These are operations in a business that are so unusual that they are excluded from basic classification. *Id.* They are classified separately unless included in the basic classification wording. *Id.* The operations called general exclusions are: (1) aircraft operation; (2) new construction or structural alterations by the insured's employees; (3) sawmill operations; (4) stevedoring; and (5) mining, quarrying, clay, gravel or sand excavation and dredging. *Id.* There are also general inclusions which are operations that appear to be separate businesses, but they are included within the scope of all classifications other than the standard exception classifications. *Id.*

The manual provides further, with respect to the assignment of classifications, that the object is to assign the one basic classification which best describes each distinct business enterprise of the insured within Pennsylvania. R. at 119a–20a. Each classification includes all the various types of labor found in a distinct enterprise. R. at 120a. Each classification is presumed to describe an entire business enterprise. *Id.* The manual defines a single enterprise as:

b. Single Enterprise. If a risk consists of a single operation or a number of separate operations which normally occur in the business described by a single manual classification, or separate operations which are an integral part of or incidental to the main business, that single classification which most accurately describes the entire enterprise shall be applied. The separate operations so covered may not be assigned to another classification even though such operation may be specifically described by some other classification or may be conducted at a separate location.

Where a retail outlet is located at the same or contiguous premises as an insured's manufacturing facility, a separate classification shall apply to the payroll of

the outlet provided that such outlet is operated in an area physically separate from other operations by structural partitions and by a separate crew of employees.

*Id.*

The manual also provides for the assignment of additional classifications with respect to multiple classifications/multiple enterprises only when valid evidence supports their authorization or in conformity with the rules stated governing standard exceptions and exclusions. *Id.* Additional classifications shall be assigned to an insured only if the following conditions exists:

1. If the classification wording requires the assignment of an additional classification for specified employees or operations.

2. If there are distinct enterprises (meaning thereby businesses, which are specifically classified in this Manual, but not operations that normally occur in the business described by the assigned classifications, nor operations described by any of the General Inclusions), conducted in a given plant by the same insured and the entire work in each enterprise is conducted either in a separate building or on a separate floor or floors of a building, or on the same floor in separate departments divided by structural partitions without interchange of labor and the insured conducts each of such enterprises as a separate undertaking with separate records of payroll, then such separate undertakings shall each be separately classified, (and the proper premium rate applied to each).

*Id.*

The manual defines the classification of hospital as:

Code 961, "Hospitals"—

Only those medical institutions providing general hospital facilities shall be assigned to Code 961—"Hospitals-". The following minimum criteria shall be used as a guide for determining those risks assigned to this classification:

1. An organized staff of doctors subject to a duly authorized set of by-laws adopted by the hospital.

2. Registered nurse supervision and such other nursing services to provide patient care 24 hours a day.

3. (a) Surgical facilities and/or (b) Operating or delivery room

4. Relatively complete diagnostic and treatment facilities for medical patients on the premises, and

5. Diagnostic X-ray and clinical laboratory services regularly and immediately available.

In general, hospitals licensed by the Commonwealth of Pennsylvania, under the following types, meet these criteria and shall be assigned to Code 961—"Hospitals-":

Type of Facility
General hospitals which admit maternity patients
General hospitals which do not admit maternity patients
Maternity hospitals

R. at 124a.

## II. MERITS

We shall discuss each of the four issues raised by GHS seriately.

### A. GHS'S POSITION

First, GHS argues that the manual provision defining Code 961—hospitals is mandatory: only hospitals which provide medical services and which meet certain minimum criteria shall be assigned the hospital classification known as Code 961. GHS points out that, as acknowledged by the Commissioner in Finding of Fact 20, it is not a hospital and does not meet any of the minimum criteria. GHS argues that it meets all the criteria of Code 953 and should be classified as clerical office employees.

Second, GHS contends that it has been recognized as being separate from its hospital subsidiaries by the federal government and that its classification must be determined by its activities, not its subsidiaries. Third, GHS argues that the manual provides for separate classifications even where the same insured performs different enterprises. In support of this argument, GHS relies on the provision of the manual which provides for the assignment of additional classifications

with respect to multiple classifications/multiple enterprises. R. at 120a.

Finally, GHS argues that it is GHS, not the hospitals, which sought reclassification and that it is GHS's activities and exposure to harm that must be examined, not the hospitals, in determining whether reclassification is appropriate.

## B. THE DEPARTMENT'S POSITION

In response, the department first argues that the objectives of classification, the general inclusions section and the single enterprise provision are complementary and when read together, they evidence an all-inclusive approach to placement and assignment to a classification.[5] The department argues further that the Commissioner properly applied the single enterprise rule to uphold the classification of GHS, the parent, as a hospital with its subsidiaries.

Second, the department contends that it is irrelevant that GHS is not licensed as a hospital or that it does not, standing alone, meet the definition of a hospital as found in Code 961. The determinative point, the department contends, is that GHS is a hospital for the purposes of classification because GHS is an integral part of the operation of the hospitals whether GHS provides patient care or employs physicians as defined in Code 961. The department points out that the Commissioner found that the hospital classification includes support functions, and that many employment functions in a traditional hospital contribute to the business administration of the hospital as opposed to patient care. Moreover, the department argues, that Code 961 is an all inclusive class for which the standard exceptions for outside sales and clerical employees are not permitted.

Finally, the department argues that GHS does not meet the criteria for separate classification under the multiple classifications/multiple enterprises rule. The department contends that GHS has not proven that its circumstances warrant the distinct classification which it is seeking under the multiple classification provision.

## C. DISCUSSION

While it is correct that the Commissioner found that GHS is not a hospital, the Commissioner's findings support the determination that GHS's employees should be assigned to the classification known as Code 961. The Commissioner found that GHS was established to provide, in an economical fashion, management services consisting of administrative services to its subsidiary hospitals. Findings of Fact 3–5. The Commissioner found further that: (1) the services offered by GHS for its subsidiary hospitals are similar to those provided by the internal staff of free standing hospitals; (2) many employment functions in a traditional free-standing hospital contribute to the business administration of the hospital, not for the direct care of the patients; (3) the services that GHS provides to its subsidiaries are normal to a hospital operation; and (4) the services that GHS offers to its subsidiary hospitals are services which enable them to carry on their business. Findings of Fact 13–16.

As pointed out previously in this opinion, the objective of the classification system is to assign one basic classification which best describes each distinct business enterprise of the insured. Each classification includes all the various types of labor found in a distinct enterprise and each classification is presumed to describe an entire business enterprise. It is the business which is classified, not the individual employments, occupations or operations within a business.

Moreover, the specific provision of the manual defining single enterprise further supports the Commissioner's decision. That provision of the manual clearly provides that a number of separate operations which normally occur in the business described by a single manual classification are to be assigned the single classification which most accurately describes the entire enterprise. In addition, the single enterprise provision specifically provides that the separate opera-

---

**5.** The bureau filed a timely notice of intervention in this appeal and has filed a brief in support of the Commissioner's adjudication and order.

tions may not be assigned to another classification, even though such operation may be specifically described by some other classification or may be conducted at a separate location.

Herein, the Commissioner found that the hospitals affiliated with GHS are commonly owned by GHS and that the functions that GHS provides to the hospitals are an integral part of the overall business operations of the hospitals. Findings of Fact 13–19. As such, under the single enterprise rule, GHS may be classified in a single classification which most accurately describes the entire enterprise. In this case that classification is Code 961—hospitals.

The fact that GHS is recognized by other governmental entities as legally separate from its subsidiaries is of no consequence herein. The manual provides through the single enterprise provision that separate operations are to be classified under a single classification which best describes the insured's entire business enterprise. In addition, the Commissioner found that Code 961 is an all inclusive classification meaning that it includes all employees of a hospital, even clerical. Finding of Fact 24. The Commissioner found further that the standard exception classifications such as code 953 and Code 951 are not permitted by the all-inclusive classifications. Finding of Fact 25. Our review of the manual's provisions as set forth above reveals that the Commissioner's interpretation was not erroneous as a matter of law.

We also reject GHS's argument that it must be classified as Code 953 under the multiple classifications/multiple enterprises provision of the manual. That provision provides for the classification of distinct enterprises meaning thereby businesses, which are specifically classified in the manual, but *not* operations that normally occur in the business described by the assigned classifications. As stated previously in this opinion, the Commissioner specifically found that the services provided by GHS to the subsidiary hospitals are services which normally occur in the business of a hospital.

Accordingly, based on the findings of the Commissioner and the provisions of the manual, we conclude that the Commissioner did not err in classifying GHS's business enterprise under Code 961—hospitals. We reiterate that this court must be especially cautious in substituting its discretion for the expertise of an administrative agency where the statutory scheme is complex. *Nationwide Mutual.*

The order of the Commissioner is affirmed.

### ORDER

NOW, this 8th day of April, 1996, the order of the Insurance Commissioner of the Pennsylvania Department of Insurance, dated January 6, 1995, at No. R91–10–04, is affirmed.