**[J-12-2020] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MICHAEL WILLIAM WOODFORD AND OPTIONS INSURANCE AGENCY, | : | No. 65 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 1005 |
| | : | CD 2018 dated January 4, 2019, |
| | : | Reconsideration Denied February |
| v. | : | 15, 2019, Affirming in Part and |
| | : | Reversing in Part the Decision of the |
| | : | PA Insurance Department at No. |
| COMMONWEALTH OF PENNSYLVANIA INSURANCE DEPARTMENT, | : | SC16-11-001 dated June 21, 2018 |
| | : | |
| | : | ARGUED: March 11, 2020 |
| Appellee | : | |

**CONCURRING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: December 22, 2020**

A section of the Insurance Department Act ("Act"), 40 P.S. §§ 1-326.7,[1] permits insurance producers like Appellants to charge a fee in addition to a commission "for the sale, solicitation or negotiation of a contract of insurance for commercial business." 40 P.S. § 310.74(a).[2] I concur in the result reached by the Majority and join Justice Wecht's concurring opinion that the plain text unambiguously precludes Appellants from charging a fee to private consumers. I write separately, however, because neither the Majority nor Justice Wecht address the first question on which we granted review, namely, whether

---

[1] 40 P.S. §§ 1-326.7, Act of May 17, 1921, P.L. 789.

[2] This part of the Act was added by Act of December 6, 2002, P.L. 1183, and is codified as Section 674-A within the Act.

the Commonwealth Court erred by deferring to the agency's legal analysis of the meaning

of 40 P.S. § 310.74(a).[3]

We granted review to address whether the Commonwealth Court erred "when it

afforded deference to the Insurance Department's interpretation of an ambiguous statute

---

[3] The Majority contends that this discussion is unwarranted and "decline[s] to issue an advisory opinion on a non-dispositive question." Majority Op. at 26 n.17. Respectfully, the deference issue is non-dispositive only because the Majority has assiduously avoided discussing the process by which the Commonwealth Court analyzed the statutory language.

The Majority finds support in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless Steel USA, LLC*, __ U.S. __, 140 S.Ct. 1637, 1647 (2020) (citing *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114-15 n.8 (2002)). According to the Majority, these "precedents make clear" that discussing deference is unnecessary. *Id.*

I respectfully disagree. In the *GE Energy Power* case, the Court examined the plain language meaning of a treaty, and observed that "We have never provided a full explanation of the basis for our practice of giving weight to the Executive's interpretation of a treaty." 140 S. Ct. at 1647. Here, we are not dealing with deference to the executive branch. And in *Edelman*, the United States Supreme Court granted review to determine whether an agency's interpretation of a statute contradicted the plain text. Notably, the intermediate appellate court, unlike the Commonwealth Court here, properly examined the plain language for itself. *See Edelman v. Lynchburg Coll.*, 228 F.3d 503, 508 (4th Cir. 2000), *rev'd*, 535 U.S. 106 (2002) ("Having concluded that application of the … regulation in this case contravenes Congress's intent, as expressed through the plain language of the statute, we need not proceed further. Step two of the *Chevron* analysis does not come into play, and we do not apply the … regulation."). The High Court disagreed with the Court of Appeals regarding the plain language analysis, and the *Edelman* footnote cited by the Majority was appended to its observation that the agency's position was one "we would adopt even if there were no formal rule and we were interpreting the statute from scratch. Because we so clearly agree with the [agency], there is no occasion to defer and no point in asking what kind of deference, or how much." *Edelman v. Lynchburg Coll.*, 535 U.S. at 114 (2002) (footnote omitted).

*Edelman* therefore offers no support for the Majority's avoiding the issue on which we granted review. Unlike the Commonwealth Court here, the intermediate appellate court in *Edelman* properly analyzed the plain language before deference was even considered. The language cited by the Majority simply reflected that any deference owed to the underlying **agency** view became irrelevant in light of its plain language analysis. In contrast, we accepted review to ask whether **the Commonwealth Court** erred in deferring to the agency.

that was penal in nature instead of strictly construing the statute against the Insurance Department, as required by Pennsylvania law?" *Woodford v. Pennsylvania Ins. Dep't*, 217 A.3d 192 (Pa. 2019). In lieu of addressing whether the panel appropriately deferred to the agency's interpretation, the Majority leaves for another day whether a court may afford "special deference," Majority Op. at 26, to a non-judicial body's interpretation of a statute.

In my view, the primary reason for this Court's grant of discretionary review was to address the Commonwealth Court's mode of analysis, which involves a broader question of law that extends beyond the instant dispute of what the plain text of 40 P.S. § 310.74(a) means. While the statutory issue of first impression we have resolved is among the reasons warranting discretionary review, absent the additional layer of whether the Commonwealth Court erred in its deferential approach I question whether our intervention would otherwise have been warranted. As to the broader issue, the Commonwealth Court, when faced with whether and when deference to an agency interpretation is appropriate in a future case, will surely continue to follow its law on that point. I would address that issue as contemplated by our allocatur grant and conclude that the Commonwealth Court's methodology is incompatible with foundational Pennsylvania law on determining the meaning of an enactment of our General Assembly.

**I.**
<u>Reviewing courts cannot defer to an agency's view that a statute is ambiguous</u>

To begin, the Commonwealth Court's error goes beyond the question of whether a court must afford "special deference" to an agency's view of what a statute means as a matter of law. Here, the Commonwealth Court deferred to the agency's determination that the statute was ambiguous.

The notion of "special deference" is taken from the United States Supreme Court's decision in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The *Chevron* Court established a two-step approach when courts review statutory interpretations conducted by federal agencies.

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43 (footnotes omitted).

Whether deference to an administrative agency is warranted when a statute is ambiguous has generated significant disagreement amongst members of the Court, as later discussed. Notwithstanding, an analysis of the Commonwealth Court's opinion illustrates that its approach in these matters is even **more** deferential than *Chevron* because it merged the two steps. That is, the panel did not first examine the statutory language to determine if there is an actual ambiguity. Instead, the court deferred to the agency's view that an ambiguity existed.[4]

---

[4] I therefore respectfully disagree with Justice Wecht's conclusion that the Commonwealth Court's deference to the Department is "entirely moot." Concurring Op. at 5. The Commonwealth Court did not analyze whether an ambiguity existed and, absent correction from this Court, will continue to apply a standard of review that I submit is contrary to law.

As indicated by the Commonwealth Court's opinion, individuals within the agency initially found that the statutory language unambiguously precluded producers like appellant from charging fees to private consumers. "The Department takes the position that the specific authorization of fees for commercial business implicitly but clearly precludes such fees for consumers." *Woodford*, 201 A.3d at 904. However, the Commissioner, the head of the Department, disagreed with the Department's position. *Id.* The Commissioner reached this result by applying statutory construction principles. "Applying rules of statutory construction, the Commissioner determined the Act did not clearly prohibit charging fees to consumers in addition to commissions[.]" *Id.* at 904. Notwithstanding, the Commissioner ultimately opted to resolve this conflict by deferring to the views of the agency staff that the statute was unambiguous. *Id.* (explaining that the Commissioner "accord[ed] deference to the Department's construction of the Act"). The Commonwealth Court, in turn, deferred to **that** view as a reasonable interpretation of the statutory text, in part because the Commissioner declined to penalize Appellants for their past practices. "Instead, the Commissioner directed only that [Appellants] cease imposing such fees in the future. This limited directive was reasonable in addressing an issue of first impression. …" *Id.* at 904-05.

A court cannot defer to an agency's view that a statute is ambiguous, and by doing so it abdicates the judiciary's duty to say what the law is. Obviously, an agency could circumvent otherwise clear statutory language by simply declaring that an ambiguity existed, expecting a reviewing court to reflexively adopt the same view. It is for the court, and not for the agency, to decide in the first instance if the relevant language is actually ambiguous. The Commonwealth Court's failure to examine the language contradicted

the teaching of *Chevron* itself, as the panel did not engage in any analysis whatsoever to determine whether the term "commercial business" was ambiguous. What the Commonwealth Court found was that the term was ambiguous **because the agency thought it was ambiguous** (despite the internal division within the agency on that point). No such deference is permitted by *Chevron*.

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

*Chevron*, 467 U.S. at 843 n.9.

The Commonwealth Court could not accept the agency's interpretation, no matter how reasonable, if that interpretation conflicted with clear legislative intent. In fact, this principle is not limited to agency interpretations of a statute but extends to an agency's reading of its own regulations. *See Kisor v. Wilkie*, ___ U.S. ___, 139 S. Ct. 2400, 2415 (2019) (plurality) ("But if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense."). Then, and only then, does a court proceed to determine whether the agency's determination is worthy of deference. *Id.* ("If **genuine ambiguity remains**, moreover, the agency's reading must still be 'reasonable'.") (emphasis added). It is therefore clear that the Commonwealth Court erred by failing to address the question of whether an ambiguity actually existed. *See also Harmon v. Unemployment Comp. Bd. of Review*, 207 A.3d 292 (Pa. 2019) (first determining that the statute "is thus obviously susceptible to two or more reasonable

interpretations and as such it is ambiguous" before discussing agency deference) (quotation marks and citation omitted).

The only discernible justification for applying a broad level of deference comes from the Commonwealth Court's recitation of the standard of review. The panel stated, "In addition, in a case involving a complex statutory scheme, courts exercise greater caution in substituting their discretion for the expertise of the Commissioner, acting as the agency head of the Department. Statutory and regulatory interpretations of a regulatory agency are accorded great deference." *Id.* at 902 n.3 (citing *Grimaud v. Pa. Ins. Dep't*, 995 A.2d 391 (Pa. Commw. 2010)). In *Grimaud*, the Commonwealth Court similarly observed in a footnote that "because this case involves a statutory scheme that is complex, we must exercise greater caution in substituting our discretion for the expertise of the Commissioner, acting as the agency head of the Pennsylvania Insurance Department. *Grimaud*, 995 A.2d at 400 n.8 (citing *Graduate Health Sys., Inc. v. Pennsylvania Ins. Dep't*, 674 A.2d 367, 370 (Pa. Commw. 1996)). These cited cases make clear that the Commonwealth Court believes that it should generally defer to an agency when the statutory scheme is complex, without accounting for the various permutations in which said deference can occur. A couple of examples will suffice. For instance, the *Graduate Health* case cited *Carlson Mining Company v. Department of Environmental Resources,* 639 A.2d 1332 (Pa. Commw. 1994), for the proposition that "[s]tatutory and regulatory interpretations of a regulatory agency should be accorded great deference." *Graduate Health* also cited *Nationwide Mutual Insurance Co. v. Foster,* 599 A.2d 267 (Pa. Commw. 1991), for the point of law that "[w]here the statutory scheme is complex, the reviewing court must be even more cautious in substituting its discretion for

the expertise of an administrative agency." *Foster*, meanwhile, said that "[a]n agency's interpretation is entitled to great judicial deference. Also, where the statutory scheme is complex a reviewing court must be even more cautious in substituting its discretion for the expertise of the administrative agency." 599 A.2d at 270 (citing *SmithKline Beckman Corporation v. Commonwealth,* 482 A.2d 1344, 1353 (Pa. Commw. 1984)). These cases suggest that a complex statutory scheme requires deference beyond "great judicial deference."

Moreover, an agency's interpretation of a statute is quite different from its interpretation of its regulations.[5] "Issues surrounding judicial deference to agency interpretations of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of statutes enacted by Congress." *Kisor v. Wilkie*, ___ U.S. ___, 139 S. Ct. 2400, 2425 (2019) (Roberts, C.J., concurring in part). The Commonwealth Court's cited standard of review suggests that judicial deference takes only one guise, at least when the statutory scheme is complex.

Its failure to independently examine the text for any ambiguity is all the more problematic given that the Commonwealth Court's basis for deferring to the agency is that the Commissioner deserves deference because she is acting as the head of the agency and applying her expertise. Yet we know that the Commissioner here disagreed with agency staff, as she thought that the statutory language was ambiguous. It is unclear

---

[5] These issues can be further subdivided. For example, the standards applied for reviewing interpretations of agency material depends on the precise material at issue. *See Harmon v. Unemployment Comp. Bd. of Review*, 207 A.3d 292, 299 (Pa. 2019) (explaining that there are "two types of agency interpretations which are accorded different levels of deference," i.e. published rules and regulations versus "guidance documents" like manuals, policy statements, and advisories). The Commonwealth Court's cited standard of review glosses over these issues.

which view actually represents the Department's "official" position, as the Commissioner ultimately adopted the very views that her expertise should have overruled.

Taken together, the Commonwealth Court erroneously cited a broad standard of review that required deference to the agency's conclusion on ambiguity and nebulously suggests that the court was permitted, or even required, to simply accept an agency's view without any legal analysis of its own regardless of the particular issue involved.

## II.
An agency's interpretation of an ambiguous statute is limited to persuasive value

The foregoing analysis addresses the Commonwealth Court's error in merging *Chevron*'s first two steps. As to the second step, in my view, the Commonwealth Court's decision to defer, as a matter of law, to the Commissioner's interpretation of the statute is unsupported by Pennsylvania law. And while the Majority declines to address whether we must defer to the agency's view, our grant of allowance of appeal anticipated a general consideration of the Commonwealth Court's announced standard of review.

This issue has generated significant disagreement amongst members of the Court, as demonstrated by our recent decision in *Harmon v. Unemployment Comp. Bd. of Review*, 207 A.3d 292 (Pa. 2019). *See id.* at 300 (observing that precedent permits granting "some measure of value to [agency] interpretations under certain circumstances") (Dougherty, J., joined by Baer and Todd, JJ.); *id.* at 308 (Saylor, C.J., concurring) ("A pervading question in this field, of course, is how much deference is due in any given context."); *id.* at 310 (Donohue, J., concurring) ("I reject any rule of construction that would require courts to abdicate our judicial role to administrative agencies."); *id.* (Wecht, J., concurring) ("I do not agree that reviewing courts should afford what often amounts to unqualified deference—*i.e.*, *Chevron* deference—to an executive-

branch agency's interpretation of an ambiguous statute.") (footnote omitted); *id.* at 313 (Mundy, J., dissenting) ("As noted by Chief Justice Saylor in his concurring opinion, some deference is due[.]"). *See also Com., Dep't of Educ. v. Empowerment Bd. of Control of Chester-Upland Sch. Dist.*, 938 A.2d 1000, 1014 (Pa. 2007) (Baer, J., concurring) ("While I agree that the Secretary enjoys a great deal of latitude in administering the Code, I do not believe that . . . administrative interpretations forwarded for the first time in connection with adversarial litigation, are entitled to any more weight than any other litigant's argument[.]")

When a reviewing court finds that a statute is ambiguous, in my view an agency's interpretation is entitled to deference only in the sense of a recognition that the agency's view should be considered for its persuasive value. This position is distinct from deferring to the agency's view as a matter of law. *Kisor*, 139 S. Ct. at 2424 ("[T]here is a difference between holding that a court ought to be persuaded by an agency's interpretation and holding that it should defer to that interpretation under certain conditions.") (Roberts, C.J., concurring in part). Pennsylvania law materially differs from federal law on this point. While we both seek to ascertain legislative intent and use various maxims and canons of statutory construction to do so, our General Assembly has specifically addressed, through its enactment of the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, the impact of administrative interpretations when reviewing ambiguous statutes. "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by **considering**, among other matters . . . . **[l]egislative and administrative interpretations of such statute**." 1 Pa.C.S. § 1921(c)(8) (emphases added). This point is significant insofar as the *Chevron* doctrine is

rooted in a background presumption of congressional intent: namely, "that Congress, when it left ambiguity in a statute" administered by an agency, "understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 740–741, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). *Chevron* thus provides a stable background rule against which Congress can legislate: Statutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency. See *Iowa Utilities Bd.,* 525 U.S., at 397, 119 S.Ct. 721. Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion.

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013). The existence of Section 1921(c)(8) of the Statutory Construction Act establishes that our General Assembly legislates against a different backdrop. If a court finds that a statute is ambiguous, the General Assembly has dictated that the ambiguity will be resolved by the courts, with the agency's interpretation as one of eight non-exclusive factors to be considered. Thus, our General Assembly, unlike Congress, has spoken in plain terms. *See Nicole B. v. Sch. Dist. of Philadelphia*, ___ A.3d ___, 2020 WL 5542091, at *5 (Pa. Sept. 16, 2020) ("Our General Assembly, unlike our federal counterpart, has dictated explicit considerations via the Act regarding how to discern its statutory intent."). As I have previously stated, "the Act conspicuously and correctly does not instruct courts to **defer** to agency interpretations (or to any other factor listed in section 1921(c)) when engaging in an interpretative analysis." *Harmon*, 207 A.3d at 309 (Donohue, J., concurring). We cannot give "special deference" to an agency's interpretation of an ambiguous statute, and suggestions to the contrary rest on grander statements, like those relied upon by the Commonwealth Court

in this case, than our law actually permits. Per the Statutory Construction Act, we may consider, but not defer to, agency interpretations of statutes.

Nothing in our Administrative Agency Law suggests that the role of statutory construction was otherwise delegated to agencies, assuming arguendo that the judicial power to say what the law is could be transferred. The subchapter dictating judicial review of Commonwealth agency decisions states:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, **or is not in accordance with law**, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 704 (emphasis added). The "in accordance with law" language naturally encompasses an appellate court applying the Statutory Construction Act, which, in turn, explicitly states that the agency's interpretation is entitled only to consideration.

Relatedly, *Chevron* itself did not cite the federal Administrative Procedures Act ("APA"), which instructs a court as follows: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C.A. § 706. There is a question of "whether *Chevron* was faithful to the text of the [APA], which it did not even bother to cite." *United States v.*

*Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting).[6]  *See also Baldwin v. United States*, ___ U.S. ___, 140 S. Ct. 690, 691 (2020) (Thomas, J., dissenting from denial of writ of certiorari) ("[*Chevron*] rests on the fiction that silent or ambiguous statutes are an implicit delegation from Congress to agencies.  *Chevron* is in serious tension with the Constitution, the APA, and over 100 years of judicial decisions.") (citation omitted).  But we need not address those criticisms of *Chevron*; we need only recognize that the Statutory Construction Act provides clear direction from the General Assembly that the judicial branch is responsible for ascertaining the meaning of an ambiguous statute, with an agency's interpretation merely one of many factors warranting consideration.  Our courts cannot recognize a *Chevron*-like "implicit delegation" to agencies to determine the meaning of an ambiguous statute without ignoring the Statutory Construction Act.

## Conclusion

Absent from the Commonwealth Court's opinion is any statutory analysis of the phrase "commercial business" in Section 674-A of the Act.  We should take this opportunity to correct the Commonwealth Court's error and hold that the nebulous standard of review employed in this case was contrary to our judicial duty to say what the law is.  While I adhere to my view that a court can consider, but not defer to, an agency's interpretation of an ambiguous statute, there should be no doubt that a court must first determine for itself whether an ambiguity actually exists.

---

[6]  Justice Scalia noted that it "could be argued . . . that the legal presumption identified by *Chevron* left as the only 'questio[n] of law' whether the agency's interpretation had gone beyond the scope of discretion that the statutory ambiguity conferred."  *United States v. Mead Corp.*, 533 U.S. 218, 241 n.2 (2001) (Scalia, J. dissenting).