**Gerald P. GRIMAUD, d/b/a Beaver Logging, Petitioner**

v.

**PENNSYLVANIA INSURANCE DE-PARTMENT and Pennsylvania Compensation Rating Bureau, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 2010.

Decided April 28, 2010.

Gerald C. Grimaud, Tunkhannock, for petitioner.

Trevor I. Poremba, Dept. Counsel and Amy G. Daubert, Chief Counsel, Harrisburg, for respondent, Pennsylvania Insurance Department.

Seth v.d.H. Cooley, Philadelphia, for respondent, Pennsylvania Compensation Rating Bureau.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BROBSON.

## I. INTRODUCTION

Petitioner Gerald P. Grimaud d/b/a Beaver Logging (Beaver Logging) petitions for review of an Adjudication and Order of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner). In his Adjudication and Order, the Commissioner affirmed a determination by the Appeals Subcommittee of the Pennsylvania Compensation Rating Bureau (PCRB), denying Beaver Logging's challenge to its business's classification for purposes of calculating its workers' compensation insurance premium. For the reasons that follow, we affirm.

## II. *BACKGROUND*[1]

Beaver Logging is a Pennsylvania sole proprietorship whose business includes purchasing timber, harvesting timber (cutting/felling trees by chain saw), and hauling and marketing logs. Beaver Logging has its own log truck, a tractor trailer, which Beaver Logging principally uses to haul its logs from its staging areas to saw mills and pulp mills. Transportation of logs cut/felled by logging businesses is integral to such businesses.

Historically, either Gerald P. Grimaud (Owner), Beaver Logging's owner, or a Beaver Logging employee drives the log truck. During the period relevant to this case, Beaver logging had only one employee—a part-time truck driver. Beaver Logging employees who operate the logging truck historically have not performed any other logging or logging-related activities, such as using chain saws. Instead, they have been employed for the sole purpose of loading, unloading, driving, and mechanical work.[2]

The parties agree, and the Commissioner found, that the skills required of a person acting as a logger and those of a truck driver are markedly different. Loggers require skills such as the operation and repair of dangerous equipment (*e.g.,* cable, chain saws, power saws) and wear safety equipment (*e.g.,* hard hats with earmuffs and screen, chaps and gloves and long johns, heavy shirt, coat and rain gear for cold weather, snow, mud and water).

Truck drivers, by contrast, require the skills commensurate with obtaining a commercial drivers license and operate generally within the confines of a heated truck cab.

Beaver Logging must compete with other logging businesses and different businesses in hiring and retaining qualified truck drivers. Beaver Logging believes that sawmills with log trucks, and log hauling companies whose sole business is hauling logs, pay wages to their drivers that Beaver Logging itself cannot afford to pay for this work. Since purchasing its log truck on September 9, 2004, Beaver Logging has hired eight drivers and has lost seven drivers. Beaver Logging estimates that those drivers have together worked a total of 12 to 14 weeks, with its current driver working part-time since July 2007.

The PCRB is a nongovernmental rating organization of private insurers. *Pennsylvania Ass'n of Home Health Agencies v. Commonwealth, Ins. Dep't,* 119 Pa. Cmwlth. 495, 547 A.2d 824, 825 (1988). Pursuant to Section 654 of the Insurance Company Law of 1921 (Law),[3] the PCRB is required to file with the Commissioner for his review and amendment, modification, or approval a system of classifications of risks, underwriting rules, premium rates, and schedule or merit rating plans for workers' compensation insurance in Pennsylvania. Under Section 707 of the Workers Compensation Act (Act),[4] every workers' compensation insurer is required

1. The Commissioner issued Findings of Fact set forth in 56 separately-numbered paragraphs. Beaver Logging does not challenge any of these findings on appeal. Accordingly, unless otherwise noted, the facts set forth above are derived from those unchallenged findings.

2. Here, the record shows that Beaver Logging's part-time employee, however, used a chain saw on Beaver Logging's property on one or two occasions. Beaver Logging has since directed him to refrain from doing so until the outcome of this case is determined.

3. Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. § 814.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1035.7, added by Act of July 2, 1993. P.L. 190.

to be a member of a rating organization and must adhere to the uniform classification system of the rating organization to which it belongs. Member insurers, however, may develop *subclassifications* to the uniform classification system of its rating organization. 77 P.S. § 1035.7(b)(2). The PCRB filing at issue in this case is the "Pennsylvania Workers Compensation Manual of Rates, Classifications and Rating Values for Workers Compensation and for Employers Liability Insurance" with an effective date of April 1, 2007 (Manual).[5]

The Act defines "classification" and "classification system" as "the plan, system or arrangement for recognizing differences in exposure to hazards among industries, occupations or operations of insurance policyholders." *Id.* § 1035.3. The PCRB uses numerical codes in its approved classification system. In *Graduate Health Systems, Inc. v. Pennsylvania Insurance Department*, 674 A.2d 367 (Pa.Cmwlth.1996), this Court described the PCRB's classification system as follows:

The general provisions of the manual governing classifications provide that the objective of the classification system is to group insureds into classifications so that the rate for each classification reflects the exposures common to such distinct business enterprise. Subject to certain exceptions, it is the business of the insured within Pennsylvania that is classified, not the separate employments, occupations or operations within the business. All classifications in the manual are basic classifications; however, some occupations are common to so many businesses that special classifica-

tions, known as standard exception classifications, have been established for them. Two such standard exception classifications are clerical office employees or Code 953 and salespersons, collectors or messengers-Outside or Code 951....

. . . .

The manual provides further, with respect to the assignment of classifications, that the object is to assign the one basic classification which best describes each distinct business enterprise of the insured within Pennsylvania. Each classification includes all the various types of labor found in a distinct enterprise. Each classification is presumed to describe an entire business enterprise.

*Graduate Health*, 674 A.2d at 370–71 (citations omitted).

The Manual provides, as a general rule, that separate operations within a single business are to be considered a "single enterprise" for purposes of classification:

**Single Enterprise.** If a risk consists of a single operation or a number of separate operations which normally occur in the business described by a single manual classification, or separate operations which are an integral part of or incidental to the main business, that single classification which most accurately describes the entire enterprise shall be applied. The separate operations so covered may not be assigned to another classification even though such operation may be specifically described by some other classification or may be conducted at a separate location.

5. The parties incorporated by reference into their September 27, 2007 Joint Stipulation of Facts as Exhibit "A" the Manual, which is available on the PCRB's website. (R. 14a.) As the Commissioner has approved the Manual, we take judicial notice of the provisions of the Manual applicable to this appeal. *See Gradu-*

*ate Health Sys., Inc. v. Pennsylvania Ins. Dep't*, 674 A.2d 367, 368 n. 2 (Pa.Cmwlth. 1996). For ease of reference, "Manual" will be used to refer to whatever version of the approved Manual is relevant for purposes of our analysis.

Manual Rule § 1, IV.C.2.b. The Manual, however, also provides for the assignment of additional classifications under certain circumstances:

**a. Multiple Classifications/Multiple Enterprises** (Not construction or erection operations—see paragraph 6.)

Additional classifications may be used only when valid evidence supports their authorization or in conformity with the rules stated under "Standard Exceptions" and "Exclusions." Additional classes may not be added without Bureau authorization when their use is in violation of Manual Rules or an existing bureau data card. Additional classifications shall be assigned to an insured only if the following conditions exist:

1. If the classification wording requires the assignment of an additional classification for specified employees or operations.

2. If there are distinct enterprises (meaning thereby businesses, which are specifically classified in this Manual, but not operations that normally occur in the business described by the assigned classifications, nor operations described by any of the General Inclusions), conducted in a given plant by the same insured and the entire work in each enterprise is conducted either in a separate building or on a separate floor or floors of a building, or on the same floor in separate departments divided by floor to ceiling partitions without interchange of labor and the insured conducts each of such enterprises as a separate undertaking with separate records of payroll, then such separate undertakings shall each be separately classified, (and the proper carrier rating value applied to each).

3. See Governing Classification rules for assignment of incidental operations that support more than one distinct enterprise.

*Id.* Rule IV.C.3.a.

Two classifications in the Manual are at issue in this proceeding. The first is Code 009, entitled **"LOGGING OR LUMBERING—, N.O.C."** [6] With respect to Code 009, the Manual provides:

Applicable to a logging or lumbering business principally engaged in cutting/felling trees for lumber or wood chips or clearing land of trees by chainsaws regardless of the trees' size. Includes stump removal incident to logging or lumbering by the logging business.

*Also applicable to the transportation of the logs* to a mill and to the construction, maintenance or extension of landings or logging roads *when performed by employees of the logging business.*

OPERATIONS NOT INCLUDED:

1. Assign Code 301 to sawmill operations conducted by a separate crew of employees.

2. *Assign Code 811 to specialist contractors engaged in hauling logs for an unrelated logging or lumbering business. Assign Code 301 to log hauling performed by a sawmill business when all logging.*

Manual § 5 at 41 (emphasis added). The second classification code is Code 811, entitled **"TRUCKING, N.O.C."**, which the Manual describes as follows:

Includes dispatchers and/or clerks on loading platforms, drivers, chauffeurs and their helpers and employees repairing vehicles.

Applicable to hauling contractors principally engaged in hauling or delivering

---

6. "N.O.C." means not otherwise classified. Manual § 5 at 4.

for unrelated concerns or transporting or delivering and setting into place furniture and/or major household appliances at customers' locations under contract with a manufacturer or store. Payroll developed in the hauling of unprepared coal shall be assigned in accordance with the rules for Code 810.

Also includes the rental of cranes with operator by a specialist contractor.

Manual § 2 at A18.

Between December 17, 2001, and May 15, 2002, Beaver Logging secured its workers' compensation from Legion Insurance Company. During that time, Beaver Logging's operations were classified under Code 009 (Logging or Lumbering, N.O.C.). Beaver Logging did not carry workers' compensation insurance between May 15, 2002 and January 17, 2005.

From January 17, 2005, to May 15, 2005, Beaver Logging purchased its workers' compensation insurance from Eastern Alliance Insurance Company (Eastern Alliance). From May 15, 2005, to August 9, 2005, Beaver Logging was insured for workers' compensation by Allied Eastern Indemnity Co. (Allied Eastern), a sister company of Eastern Alliance. Prior to insuring Beaver Logging, Eastern Alliance and Allied Eastern filed with and obtained the approval of the Commissioner for a subclassification to PCRB Code 009 for "log hauling," which the companies designated as Code 5009. *See* 77 P.S. § 1035.7(b)(2) (regarding authority to create subclassifications). While insured by these companies, however, Beaver Logging's operations were mistakenly classified as Code 811 (Trucking, N.O.C.) instead of Code 5009. Because the rates applicable to both codes were the same, however, the mistake did not affect the premium Beaver Logging paid for its

workers' compensation coverage. While insured by Eastern Alliance, Beaver Logging's insurance rate was $10.67. While insured by Allied Eastern, its insurance rate was $16.56.[7]

In August 2005, Beaver Logging chose to change its workers' compensation insurance carrier from Allied Eastern to the Pennsylvania State Workers Insurance Fund ("SWIF"), its current insurer, because Beaver Logging was dissatisfied with the services of the agent through which the Allied Eastern coverage had been placed. SWIF is a state-created fund, the purpose of which, *inter alia*, is to provide workers' compensation insurance to Pennsylvania employers. Section 1504 of the Act, added by Act of June 24, 1996, P.L. 350, 77 P.S. § 2604. SWIF is expressly authorized by statute to provide workers' compensation coverage to sole proprietors engaged in logging or logging-related businesses, such as Beaver Logging. Section 1526 of the Act, added by Act of June 24, 1996, P.L. 350, 77 P.S. § 2626. As an insured of SWIF, Beaver Logging has been assigned to Code 009 (Logging or Lumbering, N.O.C.). Unlike Eastern Alliance and Allied Eastern, SWIF does not have an approved subclassification for log hauling. Historically, the SWIF rate for Code 009 business is three to four times greater than the SWIF rate assigned to Code 811 (Trucking, N.O.C.). For example, as of April 1, 2007, the SWIF rate for Code 009 business was $46.79 compared to a rate of $13.25 for Code 811 business.

Beaver Logging began its efforts to reduce its premium for workers' compensation insurance before changing its insurance carrier to SWIF. In a letter dated January 4, 2005, Beaver Logging, through its counsel, notified the Department of La-

---

7. These are rates per $100 of payroll. *See* Manual § 1, Rules V & VI.

bor and Industry (L & I) that Beaver Logging "is purchasing a tractor trailer to haul [its] logs and, as able, the logs of others" and "engaged a driver." (Reproduced Record (R.R.) 44a.) As noted above, Beaver Logging did not have workers' compensation insurance at this time. The letter expressed concern about the rate that might apply to Beaver Logging as a result of its new hire:

> [Owner] has been informed that the workers' compensation premium for his driver will be over 40%, the same as if his driver were working in the woods. [Owner's] driver has no cutting experience and has made it clear he does not wish to work as a logger; however, the driver is a highly responsible person and a desirable driver.
>
> Through various conversations [Owner] has had with workers' compensation officials and others, he is informed that workers' compensation premiums for all truck drivers hauling things other than logs are substantially less than 40%.
>
> Please advise what can be done to conform workers' compensation premium for log truck drivers with the premiums for other truck drivers.

(R.R. 44a.) In response, L & I directed Beaver Logging to the PCRB for a response, but advised Beaver Logging that "[c]lassifications are generally reflective of business as opposed to occupations." (R.R. 45a.) Beaver Logging wrote to the PCRB on January 13, 2005, enclosing its original letter to L & I and noting further that the driver's duties would be "limited to driving trucks, loading and unloading them and mechanical work. His duties would not include cutting or skidding trees." (R.R. 46a.)

On January 17, 2005, the effective date of Beaver Logging's workers' compensation coverage with Eastern Alliance, Beaver Logging again wrote to L & I, es-

sentially inquiring as to whether SWIF intended to create a carrier subclassification applicable to drivers of logs harvested from logging and if not, why not. (R.R. 47a.) In an apparent reference to the different rates applicable to a business whose operations are within Code 009 and one whose operations are assigned Code 811, Beaver Logging claimed in the letter that "[a] 40+ percentage workers' compensation premium for truck drivers who happen to be hauling logs is unreasonable and confiscatory." (*Id.*)

By letter dated February 4, 2005, the PCRB responded to Beaver Logging's January 13, 2005 letter. The PCRB provided Beaver Logging information regarding its system for classification of risks and provided information to assist Beaver Logging in obtaining copies of insurance carrier subclassification filings. With respect to subclassifications, the PCRB noted:

> [Owner] has apparently availed himself of this system feature, as his workers compensation insurance effective January 17, 2005 is with Eastern Alliance . . ., which applies a subclassification for Code 009 to separate staff performing the transportation of logs cut/felled by a logging business. Eastern Alliance['s] Code 009 subclassification for such activity is Code 5009, with a current carrier rate of $10.67 per hundred dollars of payroll.

(R.R. 49a.) A few days later, in a response dated February 8, 2005, L & I informed Beaver Logging that "SWIF does not have plans to request a subclass within the logging industry." (R.R. 51a.)

Ten months later, and after Beaver Logging changed its workers' compensation insurance carrier from Allied Eastern (which had a subclassification for log hauling) to SWIF (which did not have a subclassification for log hauling), Beaver Log-

ging again wrote to the PCRB. In its December 8, 2005 letter, Beaver challenged its Code 009 classification with SWIF. Beaver Logging asked that its classification be changed to Code 811 because its single employee only loaded logs/equipment, drove a truck, and did mechanical work. (R.R. 52a.) In response to the request, the PCRB asked Beaver Logging to complete and return a questionnaire concerning its business. On February 23, 2006, Beaver Logging returned the completed questionnaire and again requested that its classification be changed from Code 009 to Code 811.

On April 6, 2006, the PCRB wrote back to Beaver Logging and took the position that Beaver Logging had been properly classified in Code 009. The letter also advised Beaver Logging of its right to appeal the decision, which Beaver Logging did. On August 9, 2006, the PCRB advised Beaver Logging of its final decision that Beaver Logging had been properly assigned to Code 009 and of Beaver Logging's option to appeal the final decision to the Appeals Subcommittee of the PCRB.

On November 6, 2006, Beaver Logging appealed to the Appeals Subcommittee of the PCRB. In that appeal, Beaver Logging again asked for a change of classification for its "truck driver(s) consistent with truck drivers generally rather than at the high amount assigned for logging." (R.R. 72a.) The gist of the information and argument that Beaver Logging presented to the Appeals Subcommittee was that the classification of its truck driver as a logger was anti-business, unreasonable, and confiscatory when the PCRB has other subclassifications and exceptions and has the power to create one for logging businesses.

Following a hearing on March 20, 2007, the PCRB notified Beaver Logging in a March 26, 2007 letter that the Appeals Subcommittee had unanimously voted to deny Beaver Logging's appeal for a trucking classification assignment (Code 811) and to direct that Beaver Logging's log trucking continue to be classified based on Beaver Logging's field of business, i.e., under Code 009, Logging or Lumbering, N.O.C. The Appeals Subcommittee also provided Beaver Logging with a list of six workers' compensation insurers in Pennsylvania with approved log trucking subclassifications (without passing on whether and to what extent Beaver Logging might actually be able to secure coverage from these carriers). The Appeals Subcommittee also advised Beaver Logging of its right to appeal the determination to the Commissioner.

Beaver Logging appealed the Appeals Subcommittee determination to the Commissioner. The Commissioner appointed a presiding officer on May 1, 2007. The parties agreed that the case could be submitted to the Commissioner based on stipulated facts. In his July 28, 2009 Adjudication and Order, the Commissioner rejected Beaver Logging's appeal and affirmed the Appeals Subcommittee's determination that Beaver Logging's truck driving employees were correctly assigned to Code 009. The Commissioner specifically concluded that "Beaver Logging failed to establish either that the classification scheme was misapplied to its employee or that the classification scheme is arbitrary or unfair as applied." (Adjudication at 18.) This appeal followed.

### III. *ANALYSIS*

■ Beaver Logging presents two issues for our review. First, Beaver Logging claims that certain of the Commissioner's findings at page 20 of his Adjudication are not supported by substantial evidence. Second, Beaver Logging claims that the PCRB and the Commissioner acted "without authority

and unconstitutionally" in assigning Code 009 to Beaver Logging's truck drivers, which results in a premium rate that is "over three times that of other truck drivers." (Beaver Logging Br. at 2.) [8]

### A. Challenge to Factual Findings

■ We first address Beaver Logging's claim that necessary findings of fact in the Commissioner's Adjudication are not supported by substantial evidence. "Substantial evidence is such relevant evidence as a reasonable person would consider adequate to support a finding." *Bouch v. State Ethics Comm'n*, 848 A.2d 1078, 1080 (Pa.Cmwlth.2004). Beaver Logging challenges the following factual findings found at page 20 of the Commissioner's Adjudication:

> [W]hile employers such as Beaver Logging may pay rates for its drivers higher than if those employees were classified separately, such employers also receive a benefit by paying lower rates for timbering personnel than their occupational loss experience justifies....
>
> ... [A]ny hardship or perceived unfairness to Beaver Logging is self-inflicted to some extent. Beaver Logging elected to drop a carrier which voluntarily provides separate classification for drivers at the truck driving rate. The PCRB supplied Beaver Logging with a list of other carriers in Pennsylvania similarly providing this option to logging businesses. Also, Beaver Logging pre-

sented no reason why it could not retain an unrelated independent contractor to haul its timber, something which the appellant argues is a competitive advantage to sawmills.

In response, the Pennsylvania Insurance Department (Department) and the PCRB argue that the stipulated record supports the Commissioner's findings. In the alternative, they maintain that the challenged findings are not necessary to support the Commissioner's Adjudication. We will address each challenged finding separately.

1. *"[W]hile employers such as Beaver Logging may pay rates for its drivers higher than if those employees were classified separately, such employers also receive a benefit by paying lower rates for timbering personnel than their occupational loss experience justifies."*

Beaver Logging argues that there is nothing in the record to show that it or similarly-situated logging companies benefit from the Class 009 classification. We believe that the Manual itself supports the Commissioner's point.

Reading the entirety of the Commissioner's reasoning, we are convinced that the Commissioner is referring to the rate classification system set forth in the Manual, as described above. This approach applies a single classification to the entirety of a business enterprise, regardless of the individual risk of loss associated with each separate occupation captured with the

---

**8.** We note that this Court must affirm the Commissioner's Adjudication and Order unless we find that they violate Beaver Logging's constitutional rights, they are not in accordance with law, they violate a practice or procedure of Commonwealth agencies, or a necessary finding of fact is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Graduate Health Sys.*, 674 A.2d at 370. In addition, because this case involves a statutory scheme that is complex, we must exercise greater caution in substituting our discretion for the expertise of the Commissioner, acting as the agency head of the Pennsylvania Insurance Department. *Graduate Health Sys.*, 674 A.2d at 370. "Statutory and regulatory interpretations of a regulatory agency should be accorded great deference." *Id.*

class description. The reasonable inference to be drawn from this type of classification system is that the rate associated with the single classification takes employees of all risk levels within a particular business into account, yielding a single, or blended, premium rate applicable to the class as a whole that is *lower* than the employer would pay for its highest risk employees if rated separately. The Commissioner explains as much in the pages of his Adjudication that precede the language that Beaver Logging challenges:

> As discussed above, the scheme rates employers by the type of enterprise rather than upon the risk inherent in an individual business, subject to exceptions for particular employees as specified in the Manual. Each business classification contemplates a number of diverse occupations, and rates are based on the collective loss experience of like businesses which may contain those diverse occupations practiced within those like businesses. Indeed, to examine the loss history, employees and physical layout of each business would be unworkable and defeat the very purpose of classification. While some employees may present a risk lower than contemplated by the classification, others present greater risk. Such is the nature of classification.

(Adjudication at 18 (citations omitted).) While it is true that Beaver Logging, based on its current compliment of employees—*i.e.,* a single employee who acts only as a part-time truck driver, does not presently derive a benefit from the blended-rate approach,[9] we read the Commissioner's challenged finding, in context, as merely a statement of a benefit, in general, of the blended-rate approach to classification that the PCRB adopted in its Manual.

Pursuant to Section 654 of the Law, the PCRB is required to file with the Commissioner for his review and amendment, modification, or approval a system of classifications of risks, underwriting rules, premium rates, and schedule or merit rating plans for workers' compensation insurance in Pennsylvania. 40 P.S. § 814. The Commissioner's review of such filings is also governed by Section 709 of the Act, 77 P.S. § 1035.9. The parties have stipulated that the Commissioner exercised his statutory authority and previously reviewed and approved the classification system set forth in the Manual. (R.R. 7a.) We believe that the Commissioner's general observation of a benefit attributable to the blended-rate approach in the Manual is a reasonable inference from the contents of the Manual itself, which is part of the record in this case, based on his experience and expertise in this area of the law. *See Kyu Son Yi, DVM v. State Bd. of Veterinary Med.,* 960 A.2d 864, 869–70 (Pa. Cmwlth.2008) (holding that while agency may not substitute its specialized knowledge and expertise for evidence that is absent from record, agency may use its expertise to draw reasonable inferences from facts of record). Accordingly, we

---

9. At page 17 of its Brief, Beaver Logging suggests that other logging companies such as Beaver Logging have the same business model—*i.e.,* "the owner does it all." It cites paragraph 6 and 51 of the Commissioner's Findings of Fact to support its claim. Paragraph 6 provides that "Beaver Logging currently has one employee, a part-time truck driver." Paragraph 51 provides a biography of sorts for Owner—a commendable story that includes how he started his own business as a freshman in high school with the help of his parents. Neither of these paragraphs, however, support Beaver Logging's contention that its current situation—that being a sole proprietorship where the owner does all of the logging work and has only one employee whose only obligation is to drive a truck—reflects the entirety of the logging industry in Pennsylvania or, at the very least, a substantial component of the industry.

reject Beaver Logging's claim on appeal that this finding is not supported by substantial evidence in the record.[10]

### 2. "[A]ny hardship or perceived unfairness to Beaver Logging is self-inflicted to some extent."

 In response to Beaver Logging's claim that it has been harmed by the application of Code 009 to its business, the Commissioner found that "[a]ny hardship or perceived unfairness to Beaver Logging is self-inflicted to some extent." (Adjudication at 20.) The Commissioner identified two reasons to support his finding—(1) Beaver Logging's decision to switch its workers' compensation carrier to SWIF; and (2) Beaver Logging's decision to hire an employee to haul its logs, rather than outsource the job to an independent hauler. We find that the record supports the Commissioner's reasoning and thus reject Beaver Logging's challenge.

The Commissioner noted that "Beaver Logging elected to drop a carrier which voluntarily provides separate classification for drivers at the truck driving rate." (Adjudication at 20.) Related to this first reason is the Commissioner's finding that "[t]he PCRB supplied Beaver Logging with a list of other carriers in Pennsylvania similarly providing this option to logging businesses." (*Id.*) Beaver Logging argues that these findings are not supported by substantial evidence. With respect to the decision to change carriers, Beaver Logging claims that "the Commissioner had no evidence, stipulated or otherwise, that Beaver Logging had a choice." (Beaver Logging Br. at 17.) With respect to the list of alternative carriers, Beaver Logging claims, referring to correspondence from Beaver Logging's insurance

broker, that "it is clear that Beaver Logging was unable to engage any of them." (*Id.*)

Beaver Logging's decision to change carriers from Allied Eastern, which had an approved subclassification for log hauling (Code 5009), to SWIF, which did not, is borne out in paragraphs 16 through 20 of the parties' September 27, 2007 Joint Stipulation of Facts. (R.R. 5a–6a.) Beaver Logging claims that it was somehow forced to drop Allied Eastern in favor of SWIF—*i.e.,* it did not have a choice. There is no record support for this assertion. To the contrary, paragraph 17 of the parties' joint stipulation clearly provides that Beaver Logging *chose* to leave Allied Eastern in favor of SWIF "because Beaver Logging was dissatisfied with the service of the agent through which the Allied Eastern coverage had been placed." (R.R. 6a.)

Likewise, the Commissioner's finding that the PCRB supplied Beaver Logging with a list of carriers that had approved log hauling subclassifications is supported by paragraphs 45 and 46 of the parties' joint stipulation (R.R. 11a) and the PCRB's March 26, 2007 letter determination (R.R. 83a–84a.) Beaver Logging's allegation in its Brief that it has been unable to secure coverage from these alternative carriers, even if true, is not at odds with the Commissioner's finding that PCRB supplied Beaver Logging with a list of alternative carriers. But we note further that Beaver Logging's claim that it has been unable to secure coverage from these alternative carriers lacks record support. Paragraph 48 of the parties' joint stipulation provides that since becoming an insured of SWIF in August 2005, Beaver Logging has not submitted an application for coverage with any of the alter-

---

**10.** Having concluded that this finding is supported by record evidence, we decline to address the Department's and the PCRB's alternative argument that the finding is not a necessary component of the Commissioner's Adjudication.

carriers that the PCRB identified in its March 26, 2007 letter. (R.R. 11a.)

In its Brief, Beaver Logging makes the following assertion:

> And while the [PCRB] may have suggested "a list of other carriers" to Beaver Logging, it is clear Beaver Logging was unable to engage any of them. See August 27, 2007 letter to Beaver Logging from its insurance broker wherein agent, one Scott Zaner, *indicates that he "made inquiries to the six carriers" and "the companies have all declined to offer coverage."*

(Beaver Logging Br. at 17 (emphasis added).) Beaver Logging misstates the record. The letter from Mr. Scott Zaner (Zaner) to Beaver Logging is in the record. In the first paragraph, Zaner wrote:

> In follow up to my letter of August 10, 2007, I enclose correspondence *from the company underwriters I approached* about writing coverage for your workers compensation exposure. *Unfortunately, the companies have all declined to offer coverage.*

(R.R. 85a.) The referenced correspondence, which are copies of emails, show that companies going by the short names of "NGM," "Selective," and "Cincinnati" declined Zaner's coverage inquiries on behalf of Beaver Logging because they were not in the market for logging risks. (R.R. 86a–88a.) None of these companies, however, is included in the list of companies with approved subclassifications for log haulers that the PCRB provided to Beaver Logging.

Zaner, however, did address the six companies in his letter. With respect to Eastern Alliance and Allied Eastern, Zaner wrote that "[b]ased on our prior discussions, I assume you do not wish to pursue coverage via this option." (R. 85a.) Accordingly, the record shows that Zaner did not seek coverage from either of these companies. As for American Interstate Insurance Company, Zaner noted only that he is not a licensed producer for that company and has not heard back from the company as to whether it would appoint him as a producer for the company. (*Id.*) Zaner also noted that he contacted the other three companies—Pennsylvania Manufacturers Insurance Company, Manufacturers Alliance Insurance Company, and Pennsylvania Manufacturers Indemnity Company—but had not yet received a response to his coverage inquiry. (*Id.*) Thus, contrary to Beaver Logging's assertion, the record does not show that any of these six companies declined Beaver Logging coverage.

Next, we address the second reason for the Commissioner's finding that Beaver Logging's hardship is "self-inflicted to some extent," that being the finding "that Beaver Logging presented no reason why it could not retain an unrelated independent contractor to haul its timber, something which [Beaver Logging] argues is a competitive advantage to sawmills." (Adjudication at 20.) Beaver Logging articulates its challenge to the Commissioner's finding as follows:

> The Commissioner fails to appreciate the world daily experienced by the tough, hardworking, struggling, logging entrepreneur. This logger has done all he can do to purchase timber and pay for his vehicles, saws and heavy equipment and safely cut timber, find a market for it and economically load, transport and unload his logs while doing his best to make a modest living.

> To expect Beaver Logging to let his tractor, log trailer and loader sit idle and hire an independent log hauler, is wrong, punitive and against public policy.

... The Commissioner would have Beaver Logging pay an independent hauler, which is seldom available when needed by Beaver Logging, while letting Beaver Logging's tractor, log trailer and loader sit idle? The Commissioner failed to consider Beaver Logging's investment, training, skills and experience required before so finding.

(Beaver Logging Br. at 17–18.)

Beaver Logging reads far too much into the Commissioner's finding. The Commissioner noted only that while Beaver Logging suggests that it is at a competitive disadvantage in hiring truck drivers, it failed to present any reason why it could not address its workers' compensation rate problem by outsourcing its log hauling needs to an independent contractor. In essence, the Commissioner merely noted the absence of any record evidence on this point. Nothing in Beaver Logging's argument refutes the Commissioner's finding. Though Beaver Logging hypothesizes that hiring an independent hauler would necessarily require Beaver Logging to let its own truck lie idle, the Commissioner did not make this leap. Moreover, we find no record support for Beaver Logging's hypothesis.[11] Beaver Logging also claims in its Brief that independent haulers are "seldom available when needed." Again, there is nothing in the record to support this claim.[12]

For these reasons, we find that the Commissioner's finding that Beaver Logging's alleged hardship and what Beaver Logging perceives to be unfairness in the PCRB's Manual and the application of Code 009 to its business are "self-inflicted to some extent" is supported by substantial evidence in the record.[13]

## B. Challenge to the Classification System

Beaver Logging's second challenge to the Commissioner's Adjudication and Order is that the PCRB and the Commissioner acted "without authority and unconstitutionally" in assigning Code 009 to Beaver Logging's truck drivers, which results in a premium rate that is "over three times that of other truck drivers." (Beaver Logging Br. at 2.) Regardless of how it couches its claim, however, the gist of Beaver Logging's challenge is that Beaver Logging should not be assigned Code 009 when its only employee's job responsibilities is driving its logging truck, while other businesses who have truck drivers are assigned Code 811 and, consequently, pay a lower rate for their workers' compensation insurance than Beaver Logging.

Beaver Logging's supporting argument is set forth at pages 19 through 29 of its Brief. We distill the following contentions from those pages: (1) that the PCRB's blended-rate classification system, which relies principally on the application of one Code to the entirety of a business enterprise, is *ultra vires* (*id.* at 20); (2) in the alternative, the Act "and/or Manual, Code 009, is unconstitutional as unreasonable,

---

11. For example, there is nothing in the record to show that it is cost-prohibitive for Beaver Logging to sell its hauling equipment and retain the services of an independent log hauler. While this Court appreciates the challenges that Grimaud and other logging entrepreneurs face and respects their hard work, experience, and training, that appreciation and respect are no substitute for evidence of record that this Court can consider on appeal.

12. Beaver Logging directs the Court to the Commissioner's Findings of Fact Nos. 1, 2, 3, 51, and 52. None of these finding, however, support Beaver Logging's claim.

13. Having concluded that this finding is supported by record evidence, we decline to address the Department's and the PCRB's alternative argument that the finding is not a necessary component of the Commissioner's Adjudication.

arbitrary and confiscatory, a taking without due process, contrary to the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, §§ 1 and 10 of the Pennsylvania Constitution" and violates Beaver Logging's equal protection rights (*id.* at 20, 26, 27);[14] and (3) the PCRB "should require, rather than permit, carriers to employ a subclassification for truck drivers in the logging industry" (*id.* at 24).

Before addressing each of these arguments, we will first discuss this Court's prior decision in *Graduate Health.* Both the Department and the PCRB claim that in *Graduate Health* this Court validated, or ruled lawful and constitutional, the PCRB Manual's single-enterprise classification system. We disagree. In *Graduate Health,* Graduate Health Systems, Inc. (GHS) sought a workers' compensation rate classification separate from its hospital subsidiaries. Specifically, GHS requested that its employees be classified as Code 953–clerical office employees or Code 951–salesman. The PCRB, applying the version of the Manual then in effect, ruled that under the single-enterprise rule in the Manual GHS was properly classified with its subsidiary hospitals (Code 961–hospital) and denied the requested relief. The Commissioner affirmed.

On appeal to this Court, GHS pressed its argument that it should not be classified with its subsidiary hospitals. GHS argued that the PCRB either incorrectly applied the provisions of its Manual or should have applied them differently to reach GHS's desired result. *See Graduate Health,* 674 A.2d at 370. Like the Com-

missioner and the PCRB, we reviewed the pertinent Manual provisions. *Id.* at 370–72. Finding no error in the Commissioner's or the PCRB's interpretation and application of the Manual to GHS's request, we affirmed. *Id.* at 374. But unlike Beaver Logging in this case, GHS did not challenge as *ultra vires* or unconstitutional the PCRB's classification system as a whole, the single-enterprise or blended-rate methodology set forth in the PCRB's Manual, or a particular portion of the Manual. Accordingly, we did not reach those issues in that case. *Graduate Health,* therefore, is not entirely dispositive of the issues that Beaver Logging raises in this appeal.

### 1. *Ultra Vires*

█ It is well-settled that administrative agencies, such as the Department, are creatures of the General Assembly and can only exercise the powers that are conferred upon them by statute. *Small v. Horn,* 554 Pa. 600, 609, 722 A.2d 664, 669 (1998); *Capital BlueCross v. Pennsylvania Ins. Dep't,* 937 A.2d 552, 569 (Pa. Cmwlth.2007), *allocator denied,* 600 Pa. 106, 963 A.2d 906 (2009). The Department thus acts *ultra vires* when it acts either without statutory authority or contrary to statutory authority. The PCRB is not an administrative agency; rather, it is a nongovernmental rating organization of private insurers. *Pennsylvania Ass'n of Home Health Agencies,* 547 A.2d at 825. We nonetheless will include the PCRB in our analysis of Beaver Logging's challenge

---

14. Both the Department and the PCRB urge this Court to find that Beaver Logging has waived its constitutional challenges for failure to brief them adequately. *See Commonwealth v. 542 Ontario St.,* 989 A.2d 411, 416 (Pa. Cmwlth.2010) (finding argument waived where party offered no discussion in support). While we agree that Beaver Logging's brief-

ing of its legal arguments is not as organized, artful, coherent, or complete as we would prefer to see in the briefs filed with the Court, because Beaver Logging includes at least some argument and citation to case law, we will endeavor to address the issues it has raised as best we can.

because the PCRB plays an important role in the statutory scheme at issue.

The gist of Beaver Logging's *ultra vires* argument is that the PCRB's classification system and the Commissioner's approval of that system are contrary to law. What is offensive to Beaver Logging is how the PCRB Manual provides for multiple occupations with multiple risk levels within a single business to be classified within a single class—the "single enterprise" rule. Manual § 1, Rule IV.C.2.b.[15] Beaver Logging supports an alternative classification methodology, one that would separately classify each employee within a business according to his or her particular job responsibilities and concomitant risk of injury. But while advocating for its preferred classification system over the PCRB classification system, Beaver Logging fails to explain how the PCRB system, though objectionable to Beaver Logging, actually violates the Act or the Law and is thus *ultra vires*.[16]

As noted above, pursuant to Section 654 of the Law, the PCRB is required to file with the Commissioner for his review and amendment, modification, or approval a system of classifications of risks, underwriting rules, premium rates, and schedule or merit rating plans for workers' compensation insurance in Pennsylvania. 40 P.S. § 814. The Commissioner's review of such filings is also governed by Section 709 of the Act, 77 P.S. § 1035.9. Under Section 703 of the Act, "classification system" is defined as "the plan, system or arrangement for recognizing differences in exposure to hazards among industries, occupations or operations of insurance policyholders." Our review of the Manual's classification system satisfies us that it meets the statutory definition. Moreover, the parties have stipulated that the Commissioner exercised his statutory authority and reviewed and approved the classification system set forth in the Manual. (R.R. 7a.) Finally, there is no question that the Commissioner exercised his statutory authority in adjudicating Beaver Logging's appeal from the PCRB determination. 77 P.S. § 1035.17.

■ Because Beaver Logging fails to identify any provision of the Act or the Law that either the Commissioner, the

---

**15.** We reject Beaver Logging's contention at page 20 of its Brief that it is a business that consists of two separate enterprises—(1) logging and (2) trucking. The PCRB's description of its classification Code 009 for logging or lumbering expressly includes the transportation of logs as part of that single business enterprise. Manual § 5 at 41 (emphasis added). Inclusion of log hauling within the single business enterprise of logging is consistent with the General Assembly's decision to include "the transportation of logs" within the definition of "logging" or "logging-related business" when it conferred on SWIF the authority to insure companies such as Beaver Logging. 77 P.S. § 2626.

**16.** At page 21 of its Brief, Beaver Logging claims that Section 654 of the Law requires that a rate classification system proposed by a rating organization and reviewed by the Commissioner must be "on an equitable and im-

partial basis." 40 P.S. § 814(a). Beaver Logging misreads the statutory language. The "equitable and impartial basis" language is a qualifier, referring to rating organizations that wish to make a submission under Section 654 of the Law to the Commissioner, not to a statutory standard for proposed classification systems:

[T]he classification of risks ... shall be proposed annually by one or more rating bureaus, said rating bureau or bureaus to be situate in the Commonwealth of Pennsylvania, subject to supervision and to examination by the Insurance Commissioner and *approved by the Commissioner as adequately equipped to compile rates on an equitable and impartial basis.*

*Id.* (emphasis added). The language also appears in the Act's definition of "rating organization." Section 703 of the Act, added by Act of July 2, 1993. P.L. 190, 77 P.S. § 1035.3.

Department, or the PCRB has violated, we reject Beaver Logging's claim that the classification system set forth in the Manual, either generally or as specifically applied to Beaver Logging in this case, is *ultra vires.*

### 2. Constitutional Challenges

Beaver Logging's constitutional challenges are neither well-organized nor well-developed. Essentially, Beaver Logging claims that the Act and Manual are unconstitutional because they treat a truck driver employed by a trucking company who hauls logs differently than a truck driver employed by a logging business who hauls logs. (Beaver Logging Br. at 22.) To Beaver Logging, this is unconstitutional.

 In order to succeed on this argument, Beaver Logging must overcome "the strong presumption that legislative enactments, as well as the manner in which legislation is enacted, do not violate the Constitution." *Association of Settlement Cos. v. Department of Banking,* 977 A.2d 1257, 1261 (Pa.Cmwlth.2009). The burden to overcome the presumption is heavy: "[A] statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violated the Constitution [and a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Pennsylvanians Against Gambling Expansion (P.A.G.E.) Fund, Inc. v. Commonwealth,* 583 Pa. 275, 292, 877 A.2d 383, 393 (2005). Because we find that Beaver Logging has failed to overcome this extremely deferential standard, we reject its constitutional challenges to the Act and the Manual.

Beaver Logging makes no attempt in its Brief to mount a facial challenge to the constitutionality of the Act. Instead, its constitutional challenges appear to be singularly-focused on the provisions of the PCRB Manual, as approved by the Com-missioner under the Law, and its application to Beaver Logging. As for Beaver Logging's due process challenge, we note that our Pennsylvania Supreme Court has recognized that the protections of procedural due process are applicable to the Department's review of rating bureau submissions under Section 654 of the Law. In *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 370 A.2d 685 (1977), coal mining companies challenged as unconstitutional the procedure whereby a rate increase for the Coal Mine Compensating Rating Bureau of Pennsylvania went into effect without prior notice and or an opportunity to present objections. In evaluating this challenge, the Supreme Court examined whether due process protections even attached to the rate-making process and concluded that they did:

> The government activity here is regulation of insurance rates. The dependency of the Association on such regulation of insurance is clear. The coal mining companies which make up the Association are required to purchase black lung insurance to do business in Pennsylvania, and the rates that they must pay for such insurance forms a major part of their payroll costs. If the costs they must pay for insurance are excessive, they may not be able to compete with coal mining companies in other states, and thus may not be able to continue in business.

> While designed to prevent excessive rates, the procedure for setting insurance rates adds to the Association's dependency on the Insurance Department. Although it is subject to regulation by the Department, the Rating Bureau, which proposes rates annually, is essentially a private body. If the rate proposals made by the Rating Bureau become effective, these are the only rates at

which insurance may be sold. The Association cannot depend on competition to bring down excessive insurance rates. Thus, the members of the Association are dependent on the Insurance Commissioner to review insurance rates before they are deemed into effect. Without this review, they may be forced to pay excessive rates which adversely affect their ability to compete and remain in business.

. . . .

*We conclude that the requirement that the coal mining companies purchase insurance, the importance of the insurance rates to their ability to remain in business, and the purposes of regulation by the Insurance Department create the combination of dependency and reliance which makes applicable the protections of procedural due process.*

*Pennsylvania Coal Mining Ass'n,* 471 Pa. at 448–49, 370 A.2d at 690–91 (emphasis added). But it is one thing to say that due process protections attach to a regulatory scheme; it is quite another to say that those protections have been violated.

 Beaver Logging has failed to direct this Court to any point in the regulatory or adjudicatory process where it lacked notice or an opportunity to be heard [17] with respect to its challenge to the PCRB's Manual, either on its face or as applied to Beaver Logging. Unlike the coal mining companies in *Pennsylvania Coal Mining Ass'n,* Beaver Logging does not claim that the Commissioner or the Department deprived Beaver Logging of notice and an opportunity to be heard *before* the Commissioner approved the PCRB Manual for use in Pennsylvania.

*Id.* at 455, 370 A.2d at 694. The record shows that Beaver Logging was aware (*i.e.,* on notice) of the provisions of the Manual relating to logging and how they would affect Beaver Logging if it hired an employee to haul its logs. (R.R. 44a–50a.) The record also shows that SWIF, unlike other carriers, did not have an approved subclassification for log haulers. (R.R. 51.)

In August 2005, Beaver Logging, nonetheless, elected to drop its coverage from an insurer with an approved subclassification for log hauling (Allied Eastern) in favor of SWIF, knowing that by doing so it would pay more for its workers' compensation insurance. But even then, Beaver Logging fully availed itself of the procedures under the Act and the Manual to challenge its Code 009 business classification. 77 P.S. § 1035.17; *see* Manual § 1, Rule XVI. The Commissioner even afforded Beaver Logging the opportunity to present its challenges in an adjudicatory proceeding under the Administrative Agency Law.[18] (Certified Record Docket Ex. 3.) In short, Beaver Logging has failed to show any deprivation of due process, and, on this record, we find none.

 We also reject Beaver Logging's challenge based on an alleged unconstitutional taking in violation of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. This case centers on Beaver Logging's obligation under the Act to insure the payment of workers' compensation benefits to its employees by either purchasing coverage from SWIF or an insurance company or self-insuring. Section 305 of the Act, 77 P.S. § 501. In

---

17. "[I]t is fundamental that the key principles underpinning due process include the requirements of notice and an opportunity to be heard." *Pennsylvania Bankers Ass'n v. Penn-*sylvania Dep't of Banking, 598 Pa. 313, 327, 956 A.2d 956, 965 (2008).

18. 2 Pa.C.S. §§ 501–08, 701–04.

*Smith v. Cortes,* 879 A.2d 382 (Pa.Cmwlth. 2005), *aff'd,* 587 Pa. 506, 901 A.2d 980 (2006), the petitioner, a notary public, commenced an action in our original jurisdiction, seeking to compel the Secretary of the Commonwealth to reimburse her for the expenses incurred in satisfying the education requirement under Section 5(c) of the Notary Public Law.[19] The petitioner claimed that the expense constituted an unlawful taking for a public purpose in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution. *Smith,* 879 A.2d at 384. Citing precedent from the United States Supreme Court and other federal courts, we rejected the petitioner's claim, finding that "the mere obligation to pay money, like [the petitioner's] obligation to pay for an education requirement, fails to constitute a taking." *Id.* at 385–86.

For purposes of a takings analysis, the statutory obligation to purchase insurance or self-insure under the Act is an obligation to pay money, and thus, under *Smith,* does not constitute an actionable taking under either the United States Constitution or the Pennsylvania Constitution. But even if it did, we would still be compelled to reject Beaver Logging's takings argument. The record in this case shows that Beaver Logging *chose* to purchase its insurance from SWIF, knowing that SWIF did not have a subclassification for log hauling and that, as a result, under the Manual Beaver Logging would pay the premium rate associated with Class 009 businesses. There is no evidence in the record that the Department, Commissioner, or any individual or entity acting as the state forced Beaver Logging into its current predicament. Absent legal compulsion, there can be no taking. *See Northern Area Personal Care Home Adm'rs*

*Ass'n v. Commonwealth, Dep't of Public Welfare,* 899 A.2d 1182, 1191 (Pa.Cmwlth. 2006), *aff'd,* 591 Pa. 405, 919 A.2d 187 (2007).

Beaver Logging also claims that the PCRB's classification system, which treats log haulers that work for logging companies differently from log haulers that work for generic trucking companies, violates Beaver Logging's equal protection rights. In advancing this argument, however, Beaver Logging focuses in error on the duties of its truck driver employee and compares those duties to the duties of similar employees in other businesses. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Curtis v. Kline,* 542 Pa. 249, 254, 666 A.2d 265, 267 (1995). The obligation under the Act to insure the payment of workers' compensation benefits to employees falls on *the employer*—in this case Beaver Logging, not the employees. Accordingly, to succeed on its equal protection challenge, Beaver Logging must at least show that it is being treated differently than like *employers* in like circumstances.

On this record, we cannot conclude that Beaver Logging's equal protection rights have been violated, either by application of the Manual or by the Commissioner's approval of the PCRB's classification system. Beaver Logging is not a general trucking contractor; rather, it is a logging business. Beaver Logging stipulated to the fact that transportation of logs by a logging business is integral to such businesses. (R.R. 4a.) The General Assembly has also recognized that log hauling is an integral component of a logging business, having authorized SWIF to insure log hauling risks as part of its authority to insure the

**19.** Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 151(c).

workers' compensation liability of logging businesses. 77 P.S. § 2626. Beaver Logging also stipulated to the fact that its business *is not limited* to hauling logs; rather, its business also includes purchasing and "harvesting (cutting/felling trees by chain saw) timber." (R.R. 3a.) Beaver Logging also stipulated that its logging business requires certain equipment and skills, such as handling chainsaws and power saws. (R.R. 92a–93a.)

Though Beaver Logging argues that it should be treated the same as those general trucking businesses classified in Code 811, we find nothing in the record upon which we can or should conclude that general trucking companies and logging companies, for purposes of workers' compensation insurance classification, are "like persons in like circumstances" and thus should be treated similarly. Moreover, as the Commissioner found on page 18 of his Adjudication, we find nothing in the record that would support a conclusion that Beaver Logging is being treated differently than any other logging business in Pennsylvania that is insured by SWIF.[20]

We also reject Beaver Logging's claim that its Code 009 classification is arbitrary and unreasonable. The approved classification system of the PCRB is not a classification by employee—it is a *business* classification. There is no question that Beaver Logging would prefer a classification system that applies a class/rate to each employee or each occupation within a single business enterprise. Under such

an alternative system, Beaver Logging, which has only one employee, might fare better than it does under the PCRB's current classification system. But it is not our role to choose one classification system over another. The Act and the Law vest within the Commissioner the power and authority to review and approve classification systems for compliance with the law. Exercising that authority and his expertise, he has approved the PCRB's system for reasons he explains in his Adjudication:

> Beaver Logging has failed to establish either that the classification scheme was misapplied to its employee or that the classification scheme is arbitrary or unfair as applied.
>
> As discussed above, the scheme rates employers by the type of enterprise rather than upon the risk inherent in an individual business, subject to exceptions for particular employees as specified in the Manual. Each business classification contemplates a number of diverse occupations, and rates are based on the collective loss experience of like businesses which may contain those diverse occupations practiced within those like businesses.... [T]o examine the loss history, employees and physical layout of each business would be unworkable and defeat the very purpose of classification. While some employees may present a risk lower than contemplated by the classification, other present a greater risk. Such is the nature of classification.

---

**20.** Section 654(d) of the Law grants the Commissioner the authority to withdraw his approval of a risk classification system if, *"in his judgment,* the same is inadequate or discriminates unfairly between risks of essentially the same hazard." 40 P.S. § 814(d) (emphasis added). To the extent Beaver Logging's challenges in this appeal could be construed to encompass a challenge to the Commissioner's exercise, or failure to exercise, his authority

under this section of the Law, for reasons explained above, Beaver Logging has failed to convince us that we should substitute our judgment for the Commissioner's in this case. Moreover, we see nothing in the record that would convince us that logging businesses and general trucking businesses are "risks of essentially the same hazard" such that they must be treated equally under the PCRB's classification system.

(Adjudication at 18 (citations omitted).) We defer to the Commissioner's discretion and expertise. *See Graduate Health Sys.*, 674 A.2d at 370.

■ We also reject Beaver Logging's argument that there has been an unlawful confiscation in this case without due process. The only case Beaver Logging cites in support of this contention is *Prudential Property and Casualty Insurance Company v. Department of Insurance*, 141 Pa. Cmwlth. 156, 595 A.2d 649 (1991). In that case, an automobile insurer asked the Commissioner to excuse it from *mandatory* automobile insurance rate reductions under the Act of February 7, 1990, P.L. 11 (Act 6), due to extraordinary circumstances. We noted in that case that *insurers* are entitled to a fair and adequate rate of return—*i.e.*, one that is "nonconfiscatory." "The important issue," we observed, was "the impact of the rate on the insurer." *Prudential*, 595 A.2d at 663. We held that, in order to prevail, the insurer needed to present specific evidence of the challenged rate's impact on the insurer's business. *Id.* The automobile insurer failed to do so and thus did not prevail on its claim.

Beaver Logging fails to provide any reasoned argument why the legal principle in *Prudential* can or should be applied to this case. Beaver Logging is not akin to an insurer or public utility, because the rates that Beaver Logging charges for its products or services are not set or approved by a government agency. Moreover, even if we were inclined to extend our ruling in *Prudential* to Beaver Logging, Beaver Logging failed below to develop any record evidence of the actual financial impact that purchasing insurance from SWIF at the rate assigned to Code 009 has had or would have on its business. While there is no question that Beaver Logging is paying more for its workers' compensation cover-age, having changed its carrier from Allied Eastern to SWIF, there is nothing in the record upon which we could conclude that this increase in a cost of doing business rises to the level of an unconstitutional confiscation.

In short, Beaver Logging has failed to provide record support and adequate legal grounds for its many and varied constitutional challenges to the classification system set forth in the Manual, either generally or as specifically applied to Beaver Logging.

### 3. Mandatory Subclassifications

■ Beaver Logging maintains that "the Rating Bureau should require, rather than permit, carriers to employ a subclassification for truck drivers in the logging industry." (Beaver Logging Br. at 24.) The PCRB, as a private nongovernmental entity, has no authority to require any workers' compensation insurer to create subclassifications. Even the Commissioner lacks such authority.

With respect to subclassifications, the Act provides:

(2)(i) Subject to the conditions of this paragraph, *an insurer may develop subclassifications* of the uniform classification system upon which a rate may be made.

(ii) Any subclassification developed under subparagraph (i) shall be filed with the rating organization and the commissioner thirty (30) days prior to its use.

(iii) If the insurer fails to demonstrate that the data produced under a subclassification can be reported in a manner consistent with the rating organization's uniform statistical plan and classification system, the commissioner shall disapprove the subclassification.

77 P.S. § 1035.7(b)(2) (emphasis added). Under this section, member insurers of the

PCRB may, but are not required to, create subclassifications. If they choose to do so, they must file the subclassification with the PCRB and the Commissioner. The filing with the PCRB appears to be merely for purposes of providing notification, as the statute provides no approval, or disapproval, authority to the PCRB. The Commissioner's authority is limited to only disapproving the filing if the insurer fails to show that it can report data for the subclassification consistent with the PCRB's approved statistical plan and classification system.

Under this statutory authority, the record shows that six workers' compensation insurers in Pennsylvania have chosen to create subclassifications to PCRB classification Code 009 for log hauling. (R.R. 84a.) This creates choices for logging businesses in Pennsylvania, such as Beaver Logging, who wish to lower their workers' compensation insurance premium. With these undisputed facts, and given the clear language of the Act dealing with subclassifications, we find nothing to support Beaver Logging's claim that any insurer should be forced to create subclassifications.

## IV. CONCLUSION

We appreciate Beaver Logging's sincere belief that regardless of which insurer it chooses, it should only be required to pay a rate for workers' compensation insurance commensurate with the risk, or hazard, of its only employee—a part-time truck driver. But the classification scheme adopted by the PCRB and approved by the Commissioner does not provide generally for the separate rating of individual employees within a business that Beaver Logging seeks in this case. And as sincere and as reasonable as Beaver Logging's alternative approach to rate classification might appear on its face, it does not necessarily follow that the PCRB's approach and the Commissioner's actions in this case are unconstitutional or *ultra vires*.

In considering Beaver Logging's appeal, we have been generous in our attempt to discern and address every challenge that could reasonably be gleaned from Beaver Logging's Brief. Having reviewed these challenges, we find them without merit for the reasons set forth above. Accordingly, we must affirm the July 28, 2009 Adjudication and Order of the Commissioner.

President Judge LEADBETTER did not participate in the decision in this case.

### ORDER

AND NOW, this 28th day of April, 2010, the July 28, 2009 Adjudication and Order of the Insurance Commissioner of the Commonwealth of Pennsylvania, at No. CL07–04–036, is affirmed.